NAOMI CHIPMAN *vs.* MASSACHUSETTS BAY TRANSPORTATION AUTHORITY.

Suffolk.    May 9, 1974. — September 19, 1974.

Present: TAURO, C.J., BRAUCHER, HENNESSEY, & KAPLAN, JJ.

*Insurance,* Motor vehicle personal injury protection benefits ("no-fault" insurance). *Statute,* Construction.

The plaintiff in an action of tort, who as a result of negligence of the defendant, the Massachusetts Bay Transportation Authority, sustained a sprained back and bruises on an arm and a leg when a door closed on her when she was boarding one of the defendant's buses, resulting in medical expenses of $50, could recover also for her pain

and suffering, despite the provisions of G. L. c. 231, § 6D, barring recovery for pain and suffering in an action of tort for personal injuries arising out of the operation of a motor vehicle within the Commonwealth unless $500 in medical expenses or one of the five types of injury specified was sustained, where the defendant was exempted by G. L. c. 90, §1A, from the insurance requirements of that chapter and where the plaintiff, who owned no automobile, had no such insurance, and fit none of the categories of recovery under the "assigned claims plan" of insurance required by G. L. c. 90, § 34N.  [255-260]

TORT. Writ in the Municipal Court of the City of Boston dated August 23, 1971.

Upon transfer to the Superior Court, the action was heard by *Moynihan,* J.

*James G. Fay (Robert H. Flynn* with him) for the defendant.

*Sidney I. Kramer (James G.` Sokolove & Martin B. Shulkin* with him) for the plaintiff.

*Robert H. Quinn,* Attorney General, *& James P. Kiernan,* Assistant Attorney General, for the Attorney General & another, submitted a brief.

TAURO, C.J.    This is an action of tort[1] to recover damages for personal injuries, including pain and suffering, alleged by the plaintiff to be the result of the defendant's negligence as she attempted to board a bus owned and operated by the defendant. The case was originally tried in the Municipal Court of the City of Boston, resulting in a finding for the plaintiff which included damages for pain and suffering. The Appellate Division of the Municipal Court dismissed a report claimed by the defendant. At the defendant's request, the case was transferred to the Superior Court, where it was heard by a judge without a jury on a statement of agreed facts. The judge made findings of fact and rulings of law, and found for the plaintiff in the amount of $1,250, which included damages for pain and suffering. The case is before us on the defendant's exceptions to the

---

[1] The plaintiff's declaration originally contained two counts, the first in contract and the second in tort. The plaintiff has waived the first count.

denial of its request for rulings that the plaintiff is barred from such recovery by the terms of G. L. c. 231, § 6D.[2]

From the statement of agreed facts it appears that the plaintiff was injured when a door closed on her while she was in the act of boarding one of the defendant's buses. Her injuries "were caused under circumstances that would warrant the Court in finding that said injuries resulted from negligence on the part of the defendant, its servants or agents, and that the plaintiff was in the exercise of due care." The plaintiff's injuries consisted of a sprained back and bruises on an arm and a leg. Her medical expense for treatment of those injuries was $50. She incurred no other expense as a result of the accident. Neither the plaintiff nor any member of her household owned a motor vehicle at the time of the accident.

The defendant's bill of exceptions presents for our consideration a single question of law: Is the plaintiff barred under provisions of G. L. c. 231, § 6D, from recovering damages for pain and suffering because she has neither incurred $500 in medical expenses nor suffered any of the five types of injury specified in the statute? We hold that she is not so barred.

Section 6D was added to the General Laws by St. 1970, c. 670, § 5, as a part of the sweeping reform of motor vehicle insurance legislation commonly known as the "no-fault" law.[3] Thus, while it is true, as the defendant points out,

---

[2] General Laws c. 231, § 6D, inserted by St. 1970, c. 670, § 5, provides: "In any action of tort brought as a result of bodily injury, sickness or disease, arising out of the ownership, operation, maintenance or use of a motor vehicle within this commonwealth by the defendant, a plaintiff may recover damages for pain and suffering, including mental suffering associated with such injury, sickness or disease, only if the reasonable and necessary expenses incurred in treating such injury, sickness or disease for necessary medical, surgical, x-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral expenses are determined to be in excess of five hundred dollars unless such injury, sickness or disease (1) causes death, or (2) consists in whole or in part of loss of a body member, or (3) consists in whole or in part of permanent and serious disfigurement, or (4) results in such loss of sight or hearing as is described in paragraphs (a), (b), (c), (d), (e), (f) and (g) of section thirty-six of chapter one hundred and fifty-two or (5) consists of a fracture."

[3] It is a matter of common knowledge that the enactment of this legislation was preceded by years of public protest and debate concerning the ever increasing cost of compulsory liability insurance on motor vehicles.

that § 6D purports to apply generally "[i]n any action of tort brought as a result of bodily injury . . . arising out of the ownership, operation, maintenance or use of a motor vehicle within this commonwealth by the defendant," this language must be construed in light of the legislative purposes underlying the enactment of the entire no-fault insurance scheme. "Statutes are to be interpreted, not alone according to their simple, literal or strict verbal meaning, but in connection with their development, their progression through the legislative body, the history of the times, prior legislation . . .. General expressions may be restrained by relevant circumstances showing a legislative intent that they be narrowed and used in a particular sense." *Commonwealth* v. *Welosky,* 276 Mass. 398, 401-402 (1931). The purposes underlying the enactment of the no-fault insurance scheme may be gleaned from an analysis of the operation of St. 1970, c. 670.

On another occasion we have described in detail the workings of the no-fault insurance scheme embodied in St. 1970, c. 670. See *Pinnick* v. *Cleary,* 360 Mass. 1 (1971). In that opinion we noted that the "key concept embodied in c. 670 is that of personal injury protection insurance." *Id.* at 6. Personal injury protection insurance provides for payments up to $2,000 of medical and other designated expenses by an insurer to the insured (and certain others) regardless of fault in the causation of the accident which resulted in bodily injury. In exchange for the right granted to him to recover directly from his own insurer, the insured loses (to the extent he is eligible for personal injury protection benefits) his traditional common law right to recover in tort even if he is able to prove that the other party to the accident was at fault. Thus, the principal innovation of the no-fault scheme is that owners and operators of motor vehicles insured under that scheme who are injured in accidents are entitled to immediate payment of their actual costs, e.g., medical costs, wages and certain incidental expenses, and in exchange surrender, to a limited extent, of their right to recover damages in tort actions. In addition, in those cases where the accident victim does not

come within the exceptions specified in § 6D, he surrenders, in exchange for personal injury protection, not only the right to sue for those elements of damage covered by personal injury protection but also the right to sue for pain and suffering. The exemption from tort liability is available to persons who are themselves covered by personal injury protection insurance.

The present case presents the problem of the applicability of the no-fault insurance scheme to a motor vehicle accident in which neither party is covered by personal injury protection benefits. The no-fault provisions (c. 670, §§ 1-4) amended c. 90 of the General Laws. The defendant is exempted from the requirements of c. 90 by § 1A thereof, which provides that motor vehicles owned by street railway companies under public control or by any political subdivision of the Commonwealth are exempt from the insurance requirements of the chapter.[4] The defendant thus has no personal injury protection coverage.[5] The plaintiff has no such coverage because at the time of the accident neither she nor any member of her household owned a motor vehicle. In addition, while the statute permits pedestrians and passengers to recover personal injury protection benefits through the insurance covering the motor vehicle by which or in which they are injured, this provision does not help the plaintiff since the defendant has no such coverage. Finally, while the statute requires the creation of an "assigned claims plan" in order to provide personal injury protection benefits to Massachusetts residents when no other coverage is available (c. 90, § 34N, inserted by St. 1970, c. 670, § 4), the regulations of the Commissioner of Insurance apparently permit recovery under that plan only when the injury is caused by an uninsured Massachusetts motor vehicle, which is required to be insured, a "hit-

---

[4] The defendant was created as a political subdivision of the Commonwealth. G. L. c. 161A, § 2.

[5] Although the defendant is exempt from the compulsory liability insurance requirements of G. L. c. 90, it is nevertheless liable in tort for personal injuries which it negligently causes to its passengers. G. L. c. 161A, § 21.

and-run" accident, or an out-of-State car.[6] Since the defendant does not fit in any of these categories, the plaintiff is unable to recover under the assigned claims plan.

The mere fact that the defendant does not have personal injury protection coverage does not exempt it from tort liability. There can be no question, therefore, that the plaintiff may sue the defendant for damages. The defendant argues, however, that the plaintiff's right of action does not include the possibility of recovery for pain and suffering. In other words, the defendant would have us extend to it the benefits of the exemption from liability for pain and suffering even though it does not bear the burden of providing protection afforded under the compulsory insurance statute. We do not believe that the Legislature intended so to protect the defendant by barring recovery for pain and suffering by persons, such as the plaintiff, who do not receive the compensating benefit of personal injury protection.

In our discussion of the no-fault law in *Pinnick* v. *Cleary,* 360 Mass. 1, 8 (1971), we noted that "[b]ecause the exemption of the tortfeasor is exactly matched to the availability of personal injury protection benefits to the plaintiff, the plaintiff loses nothing by it." If we were to adopt the defendant's construction of § 6D, the plaintiff in this case would lose her right to recover for pain and suffering even though she receives no personal injury protection benefits and must sue even to recover her out-of-pocket medical expenses. The more logical interpretation of the legislative intent is that this defendant and this plaintiff are beyond the scope not only of the personal injury protection coverage but also of *every* aspect of the

---

[6] The information relative to regulations issued by the Commissioner of Insurance is taken from an amicus curiae brief submitted, at our request, by the Commissioner and the Attorney General. These regulations, of course, indicate that the Commissioner interprets the statutes as we do. So long as these regulations are extant, they have the force of law and the three branches of government are bound to respect them and enforce them. See *United States* v. *Nixon,* 418 U. S. 683, 695-696.

no-fault insurance scheme.[7] As we noted in *Pinnick* v. *Cleary,* a principal purpose behind the no-fault legislation was the reduction of liability insurance premium rates for Massachusetts motor vehicle owners. *Id.* at 20.[8] Since the defendant is a self-insurer, its experience has no effect whatsoever on liability insurance rates, and the extension of the pain and suffering exemption of § 6D to the defendant would in no way further the legislative purpose of reducing insurance premiums. Thus, it is logical to conclude that the Legislature intended that in the circumstances of the present case the plaintiff's right of recovery against the defendant should remain unaffected by the provisions of St. 1970, c. 670, including the provision which creates the pain and suffering exemption.

Although we are convinced that this conclusion is the correct one purely as a matter of statutory interpretation, we also note that any interpretation which would bar this plaintiff from recovering for pain and suffering would raise doubts as to the constitutionality of at least one aspect of the no-fault scheme. Although in *Pinnick* v. *Cleary* we concluded that the no-fault scheme in its principal aspects is constitutional, we expressly declined to consider whether "the extension of personal injury protection benefits in lieu of damages to the 'pure pedestrian,' who neither owns a car nor is a member of a household which owns one, is a deprivation to him of due process." *Id.* at 27. The present case presents the even more serious question of the possible denial of due process rights to a "pure pedestrian," i.e., the

---

[7] It has long been established that the primary objective of compulsory motor vehicle insurance is to provide security for the payment of damages to travelers on public highways and not to protect the owner or operator from loss. *Wheeler* v. *O'Connell,* 297 Mass. 549 (1937).

It is reasonable to assume that the Legislature expressly excluded the defendant from the provisions of c. 90 because of its financial capability to satisfy judgments rendered against it making compulsory insurance unnecessary. For the same reasons, it is logical to assume that G. L. c. 231, § 6D ("no-fault" insurance), which is essentially a qualifying amendment to the compulsory insurance statute, was not intended to apply to the defendant and the other entities explicitly excluded in c. 90.

[8] See fn. 3.

plaintiff, who if denied damages would also not receive in return the benefits of personal injury protection. We need not decide this question now, since the statute may rationally be interpreted so as to avoid raising the constitutional issue. "We must construe the statute, 'if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score.' " *Board of Appeals of Hanover* v. *Housing Appeals Comm. in the Dept. of Community Affairs,* 363 Mass. 339, 364 (1973), quoting from *United States* v. *Jin Fuey Moy,* 241 U. S. 394, 401 (1916).

In conclusion, we wish to emphasize that this decision is restricted to the facts of this case. All that we have decided today is that a plaintiff who has no recourse to personal injury protection benefits is not barred by G. L. c. 231, § 6D, from recovering damages for pain and suffering when the uninsured defendant is expressly exempted from the no-fault scheme by c. 90, § 1A. Whether such a defendant is protected by G. L. c. 231, § 6D, in other respects is an issue we do not reach on this record.[9]

*Exceptions overruled.*

---

[9] Neither party has briefed the point that the defendant, as a public carrier, apart from its duty to exercise reasonable care, has a *contractual* obligation to its passengers to provide safe carriage. "The fundamental duty of a carrier to take care for the safety of a passenger is settled." *Carson* v. *Boston Elev. Ry.* 309 Mass. 32, 35 (1941). "Carriers of passengers are held to the exercise of the utmost or highest degree of care, skill and diligence for the safety of the passenger that is consistent with the mode of conveyance employed." *Millmore* v. *Boston Elev. Ry.* 194 Mass. 323, 327 (1907), quoting from *North Chicago St. R.R.* v. *Cook,* 145 Ill. 551, 557 (1893). "The relation of carrier and passenger is created by contract express or implied." *Hogner* v. *Boston Elev. Ry.* 198 Mass. 260, 270 (1908). Courts have sometimes deemed it necessary to determine whether a particular action against a carrier for personal injuries was one sounding in tort or contract to determine the applicable statute of limitations. 14 Am. Jur. 2d, Carriers, § 1131, fn. 4 (1964). Annotation, 20 A. L. R. 2d 331, 335-339 (1951). Whether the deprivation of such a contractual right to sue raises possible constitutional questions is an issue we need not consider in view of the result we have reached.