LEO CYR & another *vs.* JOHN S. FARIAS.

Bristol.   February 4, 1975. — May 12, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Insurance,* "No-fault" insurance.   *Constitutional Law,* Due process of law, Equal protection of laws, "No-fault" insurance.

Nonresidents of Massachusetts not covered by "no-fault" benefits were nonetheless barred by G. L. c. 231, § 6D, from recovering for pain and suffering against a Massachusetts motorist in an action of tort arising out of a motor vehicle accident in Massachusetts where the nonresidents' injuries did not meet the requirement of § 6D for such pain and suffering recovery [722-723] and such bar did not deny them due process of law or the equal protection of the laws [723-724].

TORT.   Writ in the Second District Court of Bristol dated November 8, 1972.

The action was heard by *Silva,* J.

*Francis M. O'Boy* for the plaintiffs.

*Thomas F. McGuire* for the defendant.

REARDON, J. This matter is here on appeal from a decision and order of the Appellate Division of the District Courts, Southern District.   The two plaintiffs, Leo and Lorraine Cyr, husband and wife, had brought an action in the Second District Court of Bristol in which they sought damages, including pain and suffering, for injuries sustained by Leo and by his wife Lorraine, as well as consequential damages for medical expenses sustained by Lorraine.   A property damage count was waived.   The action arose from an automobile accident which occurred on a public way in Westport, Massachusetts, on June 11, 1972.   The District Court trial judge found for the plaintiffs and awarded them a total of $5,872.   This sum included damages for pain and suffering although the medical expenses for Leo were $135 and for Lorraine $115.

The plaintiffs at the time of the accident were residents of Rhode Island, traveling in a vehicle registered in that State, owned and operated by the plaintiff Leo. The defendant is a domiciliary of Massachusetts and is insured under a compulsory motor vehicle policy which included a personal injury protection policy conformable to the requirements of St. 1970, c. 670. Leo sustained injuries to his spine and a contusion of the left arm. He suffered about a month's total disability and five weeks' partial disability thereafter, his lost earnings amounting to $822. His wife suffered a variety of bruises in addition to a traumatic neurosis and total disability from the date of the accident to July 10, 1972. Her total wage loss was $300. It is evident from the trial judge's findings that he awarded $3,000 for pain and suffering to Leo, and $1,500 to Lorraine as a portion of the total damages which he assessed. The Appellate Division took the position that the disposition of the matter was governed by G. L. c. 231, § 6D, which was inserted by St. 1970, c. 670, § 5 (the so called "no-fault" law).[1] The Appellate Division found this language to be "clear and unequivocal," concluding that the plaintiffs were subject to its provisions and not within any of the exceptions contained

---

[1] Section 6D provides: "In any action of tort brought as a result of bodily injury, sickness or disease, arising out of the ownership, operation, maintenance or use of a motor vehicle within this commonwealth by the defendant, a plaintiff may recover damages for pain and suffering, including mental suffering associated with such injury, sickness or disease, only if the reasonable and necessary expenses incurred in treating such injury, sickness or disease for necessary medical, surgical, x-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral expenses are determined to be · in excess of five hundred dollars unless such injury, sickness or disease (1) causes death, or (2) consists in whole or in part of loss of a body member, or (3) consists in whole or in part of permanent and serious disfigurement, or (4) results in such loss of sight or hearing as is described in paragraphs (a), (b), (c), (d), (e), (f) and (g) of section thirty-six of chapter one hundred and fifty-two or (5) consists of a fracture."

therein so that they could not recover for pain and suffering.

The findings were thus reduced by the Appellate Division to give Leo $957, that being the total of his medical expenses and lost wages, plus $115 for the medical expenses paid by him for treatment of Lorraine, and to give Lorraine $300 for her lost wages.

The questions posed are two: (1) whether the threshold requirement for recovery of pain and suffering imposed by G. L. c. 231, § 6D, applies to injured plaintiffs who are nonresidents not covered by no-fault benefits, and (2) whether the denial of damages for pain and suffering caused to nonresidents by a negligent Massachusetts motorist is a violation of the due process or equal protection guaranties of the United States Constitution and the Constitution of the Commonwealth.

As a matter of statutory construction, we agree with the defendant that G. L. c. 231, § 6D, excludes the plaintiffs from the right to damages based on pain and suffering since their medical expenses were less than $500. The statute refers to "any action of tort brought as a result of bodily injury . . . arising out of the ownership, operation, maintenance or use of a motor vehicle within this commonwealth by the defendant." Application of the statute is not limited to those cases where the injured plaintiff receives no-fault payments. See Kenney and McCarthy, "No-Fault" in Massachusetts, Chapter 670, Acts of 1970: A Synopsis and Analysis, 55 Mass. L. Q. 23, 40 (1970). This general principle was not abrogated by our recent decision in *Chipman* v. *Massachusetts Bay Transp. Authy.* 366 Mass. 253 (1974), where the plaintiff was injured as a result of the defendant's negligence as she attempted to board a bus owned and operated by the defendant. In that case the defendant was specifically exempted from the no-fault provisions of the General Laws in that the motor vehicles which it operated were relieved from the compulsory insurance requirements of that chapter. G. L. c. 90, § 1A. This circumstance had

a significant bearing on the decision for the court was hesitant to extend the immunity of § 6D to the defendant where the defendant did not "bear the burden of providing protection afforded under the compulsory insurance statute." *Id.* at 258. The court further reasoned that "[s]ince the defendant is a self-insurer, its experience has no effect whatsoever on liability insurance rates, and the extension of the pain and suffering exemption of § 6D to the defendant would in no way further the legislative purpose of reducing insurance premiums." *Id.* at 259. These considerations are not present here for the defendant, a Massachusetts resident, has no such exclusion from the compulsory insurance provisions. In concluding, the *Chipman* opinion was explicit in stating that the exception to § 6D carved out by that decision was a narrow one, based on a unique set of facts: "All that we have decided today is that a plaintiff who has no recourse to personal injury protection benefits is not barred by G. L. c. 231, § 6D, from recovering damages for pain and suffering when the uninsured defendant is expressly exempted from the no-fault scheme by c. 90, § 1A." *Id.* at 260. We are not inclined to broaden that exception in this case.

We turn next to the plaintiffs' argument that a denial of their rights to full recovery for pain and suffering impinges on the due process and equal protection guaranties under the Constitution of the Commonwealth and under the Fourteenth Amendment to the United States Constitution. The *Chipman* case is of no help to the plaintiffs here, based as it was purely on statutory construction. These contentions were thoroughly discussed, however, in *Pinnick* v. *Cleary,* 360 Mass. 1 (1971). In the *Pinnick* case we observed that "[i]t was clearly proper for the Legislature to conclude that the benefits of compensating an injured person for relatively minor pain and suffering, which as such entails no monetary loss, did not warrant continuation of the practice when balanced against the evils it had spawned."

*Id.* at 29. The nonresident plaintiff is not left without significant rights. Although the measure of damages in a tort action may be limited by virtue of § 6D, the defendant is not otherwise exempted from tort liability since no-fault benefits are not available to the plaintiff. G. L. c. 90, §§ 34A and 34M. In addition, the defendant's liability in tort will be secured up to the limits of the compulsory liability insurance required in this Commonwealth. G. L. c. 90, § 34A. Further, "just as . . . [the nonresident's] right to sue for pain and suffering is limited when he is non-negligent, so he is protected from comparable claims where he has been negligent." *Pinnick* v. *Cleary, supra,* at 23.

We can perceive no invidious discrimination against nonresidents. The limitation on recovery for pain and suffering imposed by § 6D operates with equal force on resident plaintiffs. Although residents may be able to receive no-fault benefits for medical expenses and seventy-five per cent of lost wages, they still cannot generally recover for pain and suffering if their medical expenses fall short of $500. Were we to exempt nonresidents from the effect of § 6D, nonresidents could actually recover more than would ever be available to resident plaintiffs to whom the restriction of § 6D applies. The plaintiffs here make much of the fact that, unlike residents, they do not receive personal injury protection on a no-fault basis to offset the loss of recovery for pain and suffering. However, they can sue for the same amount which is provided to those covered by no-fault, plus the extra twenty-five per cent of lost wages. The added expense of attorneys' fees in a lawsuit is not a factor to which we attribute great import. *Pinnick* v. *Cleary, supra,* at 8-9. Nor does it matter that the plaintiffs recover nothing if negligence is not proved, for without proof of negligence recovery for pain and suffering would not have been possible in any event.

Furthermore, in comparing the treatment of nonresidents with that of residents, it is significant that not all

residents are able to receive no-fault benefits either. For example, if a resident plaintiff is merely *entitled* to benefits under workmen's compensation, he does not receive no-fault payments. G. L. c. 90, § 34A. Or if a plaintiff has elected a full deductible under the statute, he will likewise be excluded from personal injury protection benefits. G. L. c. 90, § 34M. *Pinnick* v. *Cleary, supra,* at 24.

This latter example illustrates the further point that the no-fault benefits available to residents arise from a system of first party insurance which Massachusetts motorists have paid for themselves through their insurance premiums. It is important to bear in mind that, unlike a tort recovery for injuries, the no-fault coverage is contractual in nature. See Schermer, Automobile Liability Insurance, § 7.01 at 7-1 (1974). Manifestly, a State may properly choose to provide no-fault benefits only to its citizens since they are the ones who have paid for the insurance. See Kozyris, No-Fault Automobile Insurance and the Conflict of Laws — Cutting the Gordian Knot Home-Style, 1972 Duke L. J. 331, 381-382. There is nothing in the statute to prevent nonresidents from purchasing their own insurance at home to provide added protection beyond the actual losses which they may recover in a tort action in Massachusetts. See Ryan, Massachusetts Tries No Fault, 57 A. B. A. J. 431, 433 (1971). Cf. *Pinnick* v. *Cleary, supra,* at 9-10. That Massachusetts does not choose to provide, free of cost, no-fault payments to injured nonresidents is not a reason for concluding that it must allow nonresidents to recover for pain and suffering in cases where its own citizens could recover only their actual losses. Since we see no constitutional infirmity in G. L. c. 231, § 6D, the decision and order of the Appellate Division of the District Courts, Southern District, are affirmed.

*So ordered.*