JOHN J. MURPHY & another *vs.* FELIX J. BOHN & another.

Plymouth. December 4, 1978. — March 16, 1979.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, LIACOS, & ABRAMS, JJ.

*Insurance*, "No-fault" insurance, Motorcycle. *Motorcycle.*

The operator of a motorcycle, duly registered in this Commonwealth, was entitled to recover damages in tort for conscious pain and suffering even though he had neither incurred $500 in medical expenses nor suffered any of the five types of injury specified in G. L. c. 231, § 6D. [546-551]

TORT. Writ in the Superior Court dated September 27, 1971.

The action was heard by *Adams*, J., on a master's report, and a question of law was reported by him to the Appeals Court. The Supreme Judicial Court granted a request for direct review.

*Marshall F. Newman* for the plaintiffs.

*Frederick C. Clifford*, for the defendants, submitted a brief.

LIACOS, J. We are called on to resolve a single question here: Can an operator of a motorcycle, duly registered in this Commonwealth, as a matter of law, recover damages in tort for conscious pain and suffering, when he has neither incurred $500 in medical expenses nor suffered any of the five types of injury specified in G. L. c. 231, § 6D?[1] We hold that he can.

---

[1] General Laws c. 231, § 6D, inserted by St. 1970, c. 670, § 5 provides: "In any action of tort brought as a result of bodily injury, sickness or disease, arising out of the ownership, operation, maintenance or use of a motor vehicle within this commonwealth by the defendant, a plaintiff may recover damages for pain and suffering, including men-

A brief statement of the background of the case follows. The injury in issue was suffered on June 7, 1971; an action of tort for negligence was entered in the Superior Court for Plymouth County on November 1, 1971. On July 23, 1976, the court ordered the matter referred to a master, and the master filed a final report on January 4, 1977. In summary, the master found that the minor plaintiff, John J. Murphy (hereafter, plaintiff), while operating a motorcycle, sustained personal injuries as a result of the defendant Felix J. Bohn's negligent operation of his mother's motor vehicle. The master determined that the plaintiff was entitled to recover $4,500 damages for personal injuries, including conscious pain and suffering; he also found that John D. Murphy, the plaintiff's father, incurred reasonable and necessary medical expenses as a result, and was entitled to $262.55 for consequential damages.

The defendants thereafter filed a motion to strike the master's report, claiming that as a matter of law the plaintiff was barred from recovering damages for pain and suffering since he failed to satisfy any of the criteria established in G. L. c. 231, § 6D. In an order with accompanying memorandum, the judge allowed the defendants' motion, and reported[2] to the Appeals Court the question

tal suffering associated with such injury, sickness or disease, only if the reasonable and necessary expenses incurred in treating such injury, sickness or disease for necessary medical, surgical, x-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral expenses are determined to be in excess of five hundred dollars unless such injury, sickness or disease (1) causes death, or (2) consists in whole or in part of loss of a body member, or (3) consists in whole or in part of permanent and serious disfigurement, or (4) results in such loss of sight or hearing as is described in paragraphs (a), (b), (c), (d), (e), (f) and (g) of section thirty-six of chapter one hundred and fifty-two or (5) consists of a fracture.

[2] As part of the record on report, the judge designated the following stipulation of the parties: "1. Under Chapter 231, Section 6D of the General Laws the plaintiffs have not incurred: a. Medical expenses in excess of $500. b. Death c. Loss of a Body Member d. Permanent and

of law set forth in the margin.[3] The case is before us now on direct appellate review.

The issue presented by this case arises as a result of the unique position in which operators and passengers of motorcycles registered in this Commonwealth, injured while riding on such vehicles, find themselves. According to a regulation promulgated by the Commissioner of Insurance on December 4, 1970, pursuant to St. 1970, c. 744, § 4,[4] while motorcycle insurance policies must afford "Personal Injury Protection" (hereinafter P.I.P.) to pedestrians struck by motorcycles, no insurance company is required to provide "no-fault" protection "for owners, operators or guests of motorcycles who suffer bodily injury while operating or riding as a guest upon such vehicles."[5] Nor, according to the regulation, may any such

---

serious disfigurement e. Loss of sight or hearing f. A fracture. 2. The defendant was negligent. 3. The plaintiff was not negligent. 4. Further arguments are waived. 5. The issue is submitted on the basis of the briefs and arguments already heard and submitted."

[3] "In light of General Laws, chapter 231, § 6D, can an operator of a motorcycle, duly registered in this Commonwealth, in an action for negligence, recover damages for conscious pain and suffering where his medical bills are under $500?"

[4] Under the terms of this statute, any regulation promulgated thereunder would expire on February 6, 1971, unless ratified by both Houses of the Legislature. The regulation was ratified on February 4, 1971. See, 1971 H. Res. Nos. 5008, 5011; 1971 Senate Journal 617.

[5] The regulation, promulgated "for the purpose of enabling owners of motorcycles to readily obtain adequate insurance through private enterprise," is accompanied by a statement of "Finding and Reasons" of the Commissioner of Insurance. In that statement, the Commissioner explained that prior to the inception of the "no-fault" system, insurance policies covering motorcycles did not provide compensation for motorcycle drivers or guests who were injured in an accident, and premium rates reflected this fact. Noting that "a very large proportion of motorcycle accidents result in serious bodily injury to the motorcycle driver and his guest, if any," the statement recognized that insurance companies would experience substantial adverse financial consequences were they required to provide P.I.P. coverage in accordance with St. 1970, c. 670, for motorcycles, and that the major companies had in fact taken steps to cease writing motorcycle insurance within the Commonwealth.

operator or guest recover P.I.P. benefits from any other source.[6] Essentially, then, the plaintiff, like other owners of motorcycles duly registered in this Commonwealth, is required to carry insurance which provides P.I.P. coverage for the benefit of eligible parties *not* traveling on the motorcycle (e.g., pedestrians injured in an accident involving a motorcycle), regardless of fault, while those on the motorcycle are excluded from such coverage.[7]

Given this scheme, the plaintiffs argue that a literal application of G. L. c. 231, § 6D, so as to bar recovery for pain and suffering is inappropriate here. With this contention we agree. Our analysis requires more than a mechanistic superimposition of the statutory language onto the factual pattern of this case. As we noted in *Chipman* v. *Massachusetts Bay Transp. Auth.*, 366 Mass. 253, 256

---

[6] The regulation further provides that "[n]o person who suffers bodily injury while an operator or a guest on a motorcycle shall be entitled to recover his damages for such injury through the so-called assigned claims plan or under the Personal Injury Protection coverage of any insurance policy covering any other motor vehicle owned by such person or any member of his household." See G. L. c. 90, §§ 34M, 34N.

[7] In the memorandum of decision accompanying his order and report, the judge noted that plaintiffs' insurance policy in effect at the time of the accident included a "Motorcycle Endorsement" which removed from P.I.P. coverage "any person who sustains bodily injury while operating or occupying a motorcycle." The defendants contend in their brief that the unavailability of P.I.P. benefits to the plaintiff "arises out of his election not to provide himself with such coverage." They argue that the plaintiff could have acquired P.I.P. coverage for a motorcycle owner, operator or guest, albeit at higher premium rates, if he had opted to do so. While the language of the regulation promulgated by the Commissioner does not explicitly eliminate the possibility of the type of P.I.P. coverage referred to by the defendant, nothing in the record indicates that such protection was available to the plaintiff. See E. Martin & E. F. Hennessey, Automobile Law and Practice, § 1155.15 (Supp. 1977): "By regulation, the Insurance Commissioner has ruled that operators and occupants of motorcycles are not entitled to no-fault benefits. The policy for the motorcycle does not include coverage for them, and since they are not pedestrians, they do not fall within the coverage of any other vehicle in the collision." But cf. *Porter* v. *Michigan Mut. Liab. Co.*, 80 Mich. App. 145 (1977).

(1974), " '[s]tatutes are to be interpreted, not alone according to their simple, literal or strict verbal meaning, but in connection with their development, their progression through the legislative body, the history of the times, prior legislation .... General expressions may be restrained by relevant circumstances showing a legislative intent that they be narrowed and used in a particular sense.' *Commonwealth* v. *Welosky*, 276 Mass. 398, 401-402 (1931)."

Like *Chipman*, the case before us prompts a construction of § 6D which, while apparently divergent from the literal meaning of the provision, is consistent with the general legislative purpose. Our initial review of St. 1970, c. 670, commonly referred to as the "no-fault law" came in *Pinnick* v. *Cleary*, 360 Mass. 1 (1971), where we upheld the validity of the no-fault statute in the face of various claims of invalidity under the Federal and State Constitutions. Speaking there of the legislative intent, we said, *id.* at 15: "[T]he Legislature has not attempted to abolish the preexisting right of tort recovery and leave the automobile accident victim without redress." Throughout the opinion we sounded the theme that the loss of rights of tort recovery was valid because P.I.P. benefits were given in exchange.[8]

We sounded the same theme in *Chipman* v. *Massachusetts Bay Transp. Auth.*, *supra*, the second case to come before us under the statute. In *Chipman*, we described the essential features of the sweeping reform of motor vehicle insurance embodied in St. 1970, c. 670, and gave recognition that "personal injury protection" insurance has its "key concept." Paraphrasing *Pinnick*, we said in *Chipman*, *supra* at 256-257: "Personal injury protection insurance provides for payments up to $2,000 of

---

[8] See, for example, *Pinnick* v. *Cleary*, 360 Mass. 1, 8 (1971): "In *exchange* for the protection extended by c. 670, the accident victim loses his right to recover in tort to *the extent he is* eligible for personal injury protection benefits" (emphasis supplied). See also *supra* at 22-23.

medical and other designated expenses by an insurer to the insured (and certain others) regardless of fault in the causation of the accident which resulted in bodily injury. In *exchange for the right granted to him to recover directly from his own insurer,* the insured loses (*to the extent he is eligible for personal injury protection benefits*) his traditional common law right to recover in tort even if he is able to prove that the other party to the accident was at fault. Thus, the principal innovation of the no-fault scheme is that owners and operators of motor vehicles insured under that scheme who are injured in accidents are entitled to immediate payment of their actual costs, e.g., medical costs, wages and certain incidental expenses, and in exchange surrender, to a limited extent, their right to recover damages in tort actions. In addition, in those cases where the accident victim does not come within the exceptions specified in § 6D, he surrenders, *in exchange for personal injury protection,* not only the right to sue for those elements of damage covered by personal injury protection but also the right to sue for pain and suffering" (emphasis supplied).

In *Chipman,* notwithstanding the statutory language, we upheld recovery for pain and suffering to a plaintiff[9] who had no recourse to P.I.P. benefits, when the uninsured defendant was expressly exempted from the "no-fault" scheme.[10] We interpreted the legislative intent, in

---

[9] The plaintiff there, a woman injured while attempting to board a bus owned by the defendant, had neither incurred $500 in medical expenses nor suffered any of the five types of injury specified in the statute.

[10] In *Chipman,* the defendant was exempted from the requirements of G. L. c. 90 by § 1A thereof, which provides that motor vehicles owned by street railway companies under public control or by any political subdivision of the Commonwealth are exempt from the insurance requirements of the chapter. The defendant, a self-insurer, was of course susceptible to tort liability nonetheless. The only question in the case was whether that tort liability included the plaintiff's damages for pain and suffering in the face of G. L. c. 231, § 6D. We held that it did.

these circumstances, as placing the defendant and the plaintiff "beyond the scope not only of the personal injury protection coverage but also of *every* aspect of the no-fault insurance scheme," *id.* at 258-259 (emphasis in original), including the restrictions embodied in G. L. c. 231, § 6D.

The defendant claims that *Cyr* v. *Farias,* 367 Mass. 720 (1975), controls the result in this case. In *Cyr,* the two nonresident plaintiffs sought damages, including pain and suffering,[11] as a result of an automobile accident in Massachusetts. The defendant, a domiciliary of this Commonwealth, was insured under a compulsory motor vehicle policy which included a P.I.P. policy conforming to the requirements of St. 1970, c. 670. Although the plaintiffs were ineligible for P.I.P. benefits on a no-fault basis, we applied the language of G. L. c. 231, § 6D, to them so as to bar recovery of damages for pain and suffering. Having done so, we upheld the constitutionality of the statute as so applied, stating: "That Massachusetts does not choose to provide, free of cost, no-fault payments to injured nonresidents is not a reason for concluding that it must allow nonresidents to recover for pain and suffering in cases where its own citizens could recover only their actual losses." *Id.* at 725.

---

A different result was reached in *Scandura* v. *Trombly Motor Serv., Inc.,* 370 Mass. 612 (1976). The *Scandura* facts are analogous to those in *Chipman,* except that in *Scandura* the defendant, a common carrier, *was* covered by a motor vehicle liability policy which provided P.I.P. benefits. We denied the plaintiff's recovery for pain and suffering in the absence of satisfaction of one or more of the § 6D criteria. We stated, *supra* at 616: "The plaintiff had personal injury protection benefits available to her without the need to prove the defendant's fault or to bring suit. In exchange for this right, she lost the right to recover damages for pain and suffering in the circumstances. Such a substitution is rational and constitutional".(citations omitted). We do not consider *Scandura* to be inconsistent with the result we reached in *Chipman* or the result in this case. The plaintiff in *Scandura* had P.I.P. benefits available to her; neither this plaintiff nor the plaintiff in *Chipman* had such benefits available.

[11] Neither of the plaintiffs' medical expenses reached $500 nor did they otherwise qualify for pain and suffering damages under G. L. c. 231, § 6D.

The case before us presents a fact pattern distinct from that found in *Cyr*. The defendant here, like the defendant in *Cyr*, was subject to compulsory motor vehicle insurance, participated in the no-fault system, bore its burdens, and was eligible for its benefits. Unlike the nonresident plaintiff in *Cyr*, however, the plaintiff motorcyclist was also required to bear the burden of the no-fault scheme. Notwithstanding his contribution to the system, by regulation[12] neither he, nor any other operator or passenger on the motorcycle, injured while riding, had recourse to P.I.P. benefits. Given this conjunction of his contribution to the no-fault system and his ineligibility to receive its "key" benefit, personal injury protection, we hold that the plaintiff's right to recovery is unimpaired by the pain and suffering exemption set forth in G. L. c. 231, § 6D.[13]

---

[12] We note that "[s]o long as these regulations are extant, they have the force of law and the three branches of government are bound to respect them and enforce them. See *United States* v. *Nixon*, 418 U.S. 683, 695-696 [1974]." *Chipman* v. *Massachusetts Bay Transp. Auth.*, 366 Mass. 253, 258 n.6 (1974).

[13] We note that the problems incident to no-fault coverage for motorcyclists have not gone unnoticed in other jurisdictions. In none of the jurisdictions we have surveyed is an injured motorcyclist who is required to contribute to a no-fault system precluded from both P.I.P. benefits and full tort recovery. See generally Am. Jur. 2d, No Fault Insurance § 17 (New Topic Service 1973). The Uniform Motor Vehicle Accident Reparations Act appears to cover motorcycles under no-fault, if they are required to be registered, or if they are not designed for off-road use. See Uniform Motor Vehicle Accident Reparations Act, § 1(a)(7). The New Jersey no-fault law, N.J. Stat. Ann. § 39:6A-1 (1973), et seq., has been construed to require P.I.P. benefits for the named insured and members of his family residing in his household who sustain bodily injury as the result of *any* accident involving an automobile. *Hoglin* v. *Nationwide Mut. Ins.* Co., 144 N.J. Super. 475 (1976). In *Hoglin*, the named insured, injured when the motorcycle he was operating collided with an automobile, was deemed to be eligible for P.I.P. benefits notwithstanding an endorsement in his insurance policy, approved by the Commissioner of Insurance, which appeared to preclude such recovery. See also, *Harlan* v. *Fidelity Cas. Co.*, 139 N.J. Super. 226 (1976).

In Kansas, a statute making optional the purchase of P.I.P. coverage

We answer the reported question in the affirmative, and remand to the Superior Court for further proceedings not inconsistent with this opinion.

*So ordered.*

---

for motorcycle owners was deemed constitutionally valid. *Manzanares v. Bell,* 214 Kan. 589 (1974). See also *Porter* v. *Michigan Mut. Liab. Co.,* 80 Mich. App. 145 (1977).

In several other States, motorcycles are excluded from the category of vehicles requiring no-fault coverage. See, e.g., Conn. Gen. Stat. c. 690, § 38-319(g) (1977); Minn. Stat. Ann. § 65B.43(2) (1979); N.Y. Ins. Law, § 671(6) (McKinney Supp. 1978). In New York, a motorcyclist is exempted from the no-fault insurance system, but if the motorcyclist is injured in a collision with an automobile he is entitled to recover P.I.P. benefits under the automobile owner's mandatory no-fault policy. *Perkins* v. *Merchants Mut. Ins. Co.,* 41 N.Y.2d 394 (1977). Cf. *Brown* v. *Crawford,* 84 Misc. 2d 642 (N.Y. Sup. Ct. 1975).