Sanders, Janet L., J.
This case by a group of state lobbyists challenges the defendants’ application of the state lobbying statute and raises the question of what that statute means in requiring the lobbyists to disclose their “direct business associations” with public officials. The matter is now before the Court on the defendants’ Motion for Judgment on the Pleadings. Plaintiffs not only oppose that motion but seek judgment in their favor on Count I of the Complaint, which seeks a declaration that the defendants’ conduct is not in accordance with the statute and is therefore invalid. For reasons set forth below, this Court concludes that the plaintiffs are entitled to judgment in their favor.
BACKGROUND
The facts necessary to resolve this motion are not disputed. The plaintiffs are all “legislative agents” and/or “executive agents” as defined by G.L.c. 3, §39. Accordingly, they are required to file an annual registration statement with the Secretary for the Commonwealth of Massachusetts (the Secretary) on forms “prescribed and provided by” him. G.L.c. 3, §41. Every six months—in July and January of each year—these same individuals are required to file with the Secretary an itemized statement containing that information outlined in G.L.c. 3, §43 (Section 43). The interpretation of Section 43—specifically the third paragraph—is what is at issue in this case.
As originally written, that paragraph required every lobbyist to provide a list of all bill numbers that he or she acted to “promote, oppose or influence” during the six-month reporting period. That paragraph was rewritten and substantially expanded by Ethics Reform Law, St. 2009 c. 28, §8 to require that the lobbyist provide the following additional information:
(1) the identification of each client for whom the legislative or executive agent provided lobbying services; (2) a list of all bill numbers and names of legislation and other governmental action that the executive or legislative agent acted to promote, oppose or influence; (3) a statement of the executive or legislative agent’s position, if any, on each such bill or governmental action; (5) the amount of compensation received for executive or legislative lobbying from each client with respect to such lobbying services; and (6) all direct business associations with public officials. The disclosure shall be required regardless of whether the legislative agent or executive agent specifically referenced the bill number or name, or other governmental action while acting to promote, oppose or influence legislation, and shall be as complete as practicable.
(Emphasis added.) This amendment was made following the issuance of a Report and Recommendations by the Governor’s Task Force on Public Integrity which called for enhanced disclosure requirements. That Report, dated January 6, 2009, is referenced in the Complaint and is attached to plaintiffs’ Memorandum. [1]
The amendment took effect January 1, 2010. For the next five reporting periods, the Secretary utilized a form containing a box that required the executive or legislative agent to disclose, among other things, his or her “direct business association with a public official.” For each reporting period, the named plaintiffs entered “None” or “N/A” indicating that they had no business association with a public official. They received no indication from the defendants or the division of the Secretary’s office charged with reviewing these statements (the “Lobbying Division”) that their disclosure statements were incomplete or in need of correction. Beginning in July 2012, however, each of the plaintiffs received an email notice from the Lobbying Division informing them that their response of “None” or “N/A” would not be correct if they had any “communications” with any public official or legislator. As one message explained:
The Chief Legal Counsel has reviewed M.G.L.c. 3, §43 and determined that, in context, the reference to business would be a reference to the “lobbying business” and therefore the question is what direct lobbying associations occurred during the disclosure period. There is no indication that the legislature in enacting section 43 had concerns about business associations independent of lobbying activities.
¶33 of Complaint (quoting email to plaintiff Gibbons). Similar emails were sent to other registered lobbyists. See e.g. ¶34 of Complaint (informing plaintiff Lambert that: “Where your business is lobbying, the law requires disclosure of the public officials lobbied”); ¶¶35, 36 of Complaint (emails instructing plaintiffs Wilmot and Chester that they “must provide names of all public officials communicated with”); 138(e) of Complaint (email to plaintiff Reid advising him that: “in the business section box, you are required to report the name of the public official or legislator with whom you communicated with [sic] for each lobbying activity”). In other words, Section 43 requires, according to the Secretary, that all registered lobbyists list every public official with whom they have had any communication about a bill or other governmental action during the six-month reporting period, even though they have no relationship with the public officials beyond the lobbying activity.
*331 DISCUSSION
The question before the Court is one of statutory interpretation. “The object of all statutory construction is to ascertain the true intent of the legislature,” with the court examining the words actually used as well as the circumstances under which the statute was enacted. As the SJC has put it, statutes “are to be interpreted not alone according to their simple, literal or strict verbal meaning, but in connection with their development, their progression through the legislative body, the history of the times [and] prior legislation.” Sullivan v. CJAM, 448 Mass. 15, 24 (2006), quoting Murphy v. Bohn, 377 Mass. 544, 579 (1979). The words are to be given their ordinary and common meaning, “considered in the context of the objectives which the law seeks to fulfill.” Int’l Org. of Masters, etc. v. Woods Hole v. Martha’s Vineyard & Nantucket S.S. Auth., 392 Mass. 811, 813 (1984). Applying these principles to the issue before me, this Court concludes that both the language of Section 43 as well as the circumstances which led to the amendment at issue support the plaintiffs’ position as to its meaning.
The pertinent language of Section 43 requires lobbyists to disclose “all direct business associations with public officials.” The statute does not define what constitutes a “business association.” Therefore, this Court assumes that the legislature intended that the words be given their ordinary and common usage. Although there is no strict dictionary definition for the phrase itself, the word “association” has been defined as “a group of people organized for a joint purpose” or a" connection or cooperative link between people or organizations." Oxford online dictionaries, http://ox-forddictionaries.com/definition/american_english/ association. Accordingly, a “business association” would denote ajoint enterprise or transaction between one or more individuals of a financial or commercial nature. It is not commonly understood to be an event as transient as a “communication” from one person to another, which is the meaning that the Secretary appears to ascribe to the term.
The defendants argue, however, that G.L.c. 3, §39 provides the definitions that should be followed in interpreting Section 43. Section 39 defines a “legislative agent” as any person who “for compensation or reward engaged in legislative lobbying, which includes at least 1 lobbying communication with a government employee made by said person.” (Emphasis added.) “Legislative Lobbying” also includes “strategizing, planning and research if performed in connection with or for use in an actual communication with a government employee.” (Emphasis added.) The sine qua non of the lobbyist’s business is therefore that he or she is engaging in “communications” with government officials. Consequently (the defendants argue), because the plaintiffs are necessarily engaging in the “business” of lobbying when they communicate with government officials for the purpose of influencing legislation, Section 43’s reference to “business associations” means that all registered lobbyists must identify those government officials with whom they communicated.
To put it bluntly, this argument makes absolutely no sense. As the plaintiffs point out in their memorandum at p. 8, Section 39’s definition regarding who is deemed to be a legislative agent engaged in the business of legislative lobbying has no logical or textual bearing on what that same agent must report under Section-43. Section 39’s definitions are important to determine who must register with the Secretary. They have nothing to do with the disclosure obligations set forth in Section 43. Thus, for example, Section 39 defines lobbying broadly to include strategizing, planning and research. But that broad definition does not mean that Section 43 requires a lobbyist to disclose such plans or strategies. Conversely, Section 43 requires a lobbyist to disclose certain campaign contribution and expenditures, but such expenditures have nothing to do with the definitions of “legislative agent” or “legislative lobbying.”
Indeed, section 39 does not define “business associations” at all. Instead, defendants lift certain words from that section and then, in a mangled use of the English language, maintain that Section 43 means that the lobbyist and government official are necessarily engaged in business together whenever the lobbyist communicates with that official in an attempt to influence legislation. As the defendants concede, however, to enter into an “association” with another means to join or unite together for some common purpose. Clearly, the government official on the receiving end of a communication by a lobbyist does not thereby agree to unite with that lobbyist either to accomplish the end sought by the lobbyist or to assist him in his lobbying business. In short, if the legislature had meant a lobbyist to disclose all communications to a government official regardless of whether the two had any separate business relationship, then it would have said so.
The plaintiffs’ position is only strengthened when this Court considers what led up to the amendment to Section 43. In 2008, Governor Deval Patrick appointed a bipartisan task force charged with making specific recommendations to improve the ethics and lobbying laws.[2] It was organized in the wake of news reports of misconduct by certain government officials, particularly in their dealings with persons who had some stake in pending legislation. See Report, p. 1 (alluding to “recent highly publicized reports of transgressions”). One of the most prominent cases was that of then Speaker of the House Salvador DiMasi, who was alleged to have had personal and business relationships with lobbyist Richard Vitale at a time when Vitale was seeking to influence legislation regarding ticket resales. The Task Force studied laws in other states which required lobbyists to disclose their business *332 relationships with government officials and suggested that Massachusetts’ laws be amended to require the same kind of disclosure in order to provide “greater transparency and accountability.” See Report at pp. 21-22.[3] Its specific recommendations included a proposed amendment to Section 43 that would require lobbyists to disclose “any direct business relationships with public officials.” Clearly, the “evil” that the recommendation sought to eradicate was the danger that a lobbyist and government official could be involved in a separate commercial or financial transaction, unknown to the public; that could make that official more susceptible to being influenced by the lobbyist.
Certainly, the Secretary’s reading of Section 43 does not address the problem that the Task force sought to eliminate. Indeed, it would appear to negate the salutary effect of the legislation that was adopted in the wake of the Task Force’s recommendation. By requiring a lobbyist to disclose all communications with government officials, the law would do nothing to bring sunlight into those darkened recesses of the lobbyist/government official relationship which had been the breeding grounds for trouble. Financial and commercial relationships between lobbyist and government official that could create a conflict of interest would continue to remain hidden from public view.
Perhaps the most interesting chapter in this legislative background stoiy is that described by the plaintiffs on pp. 15-16 of their Memorandum. The governor filed a bill seeking changes in the lobbying law in line with the Report’s recommendations. As that bill was progressing through the legislative process, Senator Eldridge filed a bill, S. 1415, on the petition of the defendant, Secretary Galvin. Section 12 of this bill proposed that Section 43 be replaced with a new provision that required a lobbyist to file disclosure statements that included “the names of the persons, organizations, legislative bodies or committees before which he has lobbied.” This proposal was sent to a study committee and died there. Apparently, the Secretary now seeks to accomplish by administrative fiat that which he was unable to achieve through the legislative process. This he cannot do.
CONCLUSION AND ORDER
For all the foregoing reasons and for other reasons set forth in the plaintiffs’ comprehensive Memorandum of Law, the defendants’ Motion for Judgment on the Pleadings is DENIED. The plaintiffs’ request that that judgment enter in their favor as to Count I of the Complaint is hereby ALLOWED. Because this may render the remaining counts moot, this Court requests that plaintiffs promptly filed a proposed form of judgment pursuant to Rule 9A.

This Court may take judicial notice of official government reports, seee.g. Commonwealthu. FlorenceF., 429Mass. 523, 529 (1999), and may consider the Task Force Report in ruling on the instant motion, particularly since it is referenced in the Complaint and the defendants do not deny its existence. See Jarocz v. Palmer, 49 Mass.App.Ct. 834, 836 (2000).

One of the members of the Task Force was the named plaintiff Pamela Wilmot. Other members included four legislators, businessmen, lawyers, and a law professor.

Footnote 67 of the Report cites statutes from four other states to illustrate what the Task Force had in mind. Each of those statutes use language which requires disclosure of relationships and transactions that are commercial or financial in nature.