420 A.2d 676

**Michael TOTER, Appellant,**

v.

**Sara E. KNIGHT.**

Superior Court of Pennsylvania.

Submitted Sept. 13, 1979.

Filed June 6, 1980.

548

Charles J. Conturso, Morrisville, for appellant.

Charles McIlhinney, Doylestown, for appellee.

Before SPAETH, HESTER and CAVANAUGH, JJ.

SPAETH, Judge:

This appeal arises from an order sustaining preliminary objections and dismissing an amended complaint in trespass.

The allegations of the amended complaint may be summarized as follows. On September 9, 1976, appellant was operating an automobile in Bucks County and collided with

an automobile operated by appellee. At the time of the accident, appellant was a resident of New Jersey, and his automobile was registered in that state. Appellee was a resident of Pennsylvania, and her automobile was registered here. The collision occurred as a result of appellee's negligence, and caused appellant physical injuries for which appellant has or will incur medical expenses exceeding $200.00, "exclusive of hospital expenses, x–rays and other diagnostic medical expenses," and also caused appellant physical pain and mental anguish. The complaint further alleged that under Pennsylvania law, appellant's right to sue on account of these injuries was to be determined by the law of the state of his domicile, *i. e.*, New Jersey, and that under section 6A–8 of the New Jersey Automobile Reparation Act, N.J.S.A. § 39: 6A–8 (1973), a victim of an automobile accident has the right to sue in tort whenever the cost of medical treatment, exclusive of x–rays, hospital bills, and other diagnostic expenses exceeds $200.

On February 22, 1978, appellee filed preliminary objections to the amended complaint, which the lower court sustained on February 14, 1979. The lower court believed that appellant's action was barred by section 301(a) of the Pennsylvania No–Fault Motor Vehicle Insurance Act, 40 P.S. § 1009.301(a) (1979–80 Supp.), which provides:

Tort liability is abolished with respect to any injury that takes place in this State in accordance with the provisions of this act if such injury arises out of the maintenance or use of a motor vehicle, except that

   *  *  *  *  *  *

(5) A person remains liable for damages for non–economic detriment if the accident results in:

   *  *  *  *  *  *

(B) the reasonable value of reasonable and necessary medical and dental services, including prosthetic devices and necessary ambulance, hospital and professional nursing expenses incurred in the diagnosis, care and recovery of the victim, exclusive of diagnostic x–ray costs and rehabilitation costs in excess of one hundred dollars ($100) is in excess of seven hundred fifty dollars ($750).

The lower court held that appellant had not met this $750 threshold requirement, since the amended complaint alleged that appellant's medical expenses were in excess of only $200.[1]

Section 110(c)(2) of the Pennsylvania No—Fault Act, 40 P.S. § 1009.110(c)(2) (1979—80 Supp.), provides:

The right of a victim or of a survivor of a deceased victim to sue in tort shall be determined by the law of the state of domicile of such victim. If a victim is not domiciled in a state, such right to sue shall be determined by the law of the state in which the accident resulting in injury or damage to property occurs.

This provision has been criticized as being "impossible of interpretation or execution." Barrett, Pennsylvania No—Fault Motor Vehicle Insurance Act: Practice Under the Act 102 n. 51 (Pa. Bar Institute 1975). We do not find it all that obscure. The provision embodies two choice—of—law princi-

1. We note that the argument that appellant's action was barred by Pennsylvania's No—Fault Act was not raised in appellee's written preliminary objections. In her preliminary objections, appellee admitted "for the purposes of demurrer that Pennsylvania law looks to the domicil of the victim for applicable tort law." Appellee argued, however, that because "[t]he general rule for tort liability suits in the state of New Jersey is that the law of the place of the wrong governs the injured parties right to suit [sic] .... New Jersey law would look to Pennsylvania for the rights to sue in tort," and that for this reason appellant's action was barred by the Pennsylvania No—Fault Act. Appellee did not cite supporting authority for this proposition, and the proposition seems to be contrary to the holding in *Cirelli v. Ohio Cas. Ins. Co.*, 72 N.J. 380, 371 A.2d 17 (1977) (New Jersey no—fault law affords coverage to New Jersey assured regardless of place of accident). *See also Goldstein v. First General Ins. Co.*, 258 Pa.Super. 284, 392 A.2d 796 (1978). We need not decide this issue, however, for appellee has abandoned her argument. The argument was not discussed by the lower court in its opinion, and appellee does not raise it on appeal. The discrepancy between the argument raised by appellee in her written preliminary objections and the one addressed by the lower court in its opinion nevertheless raises the possibility that the lower court decided an issue that was never raised, or if raised was waived, by the parties. This possibility is troublesome, but because appellant has declined to attack on this appeal the procedure followed by the lower court, and because the issue addressed by the lower court may have implicated its jurisdiction to entertain the complaint, we deem it appropriate to reach the merits of the lower court's decision.

ples: 1) The right of the victim of a motor vehicle accident to sue in tort shall be determined by the law of his domicile; and 2) if the victim is not domiciled in a state, the victim's right to sue shall be determined by the law of the state in which the accident occurred. The first principle applies to this case, for the amended complaint alleges that appellant was domiciled in New Jersey at the time of the accident. It therefore follows the appellant's right to sue must be determined by the law of New Jersey, not Pennsylvania, and it further follows that appellant's action in not barred by section 301(a).

In holding that appellant's action was barred, the lower court found an irreconcilable conflict between sections 110(c)(2) and 301(a). The lower court emphasized that under section 301(a) "[t]ort liability is abolished with respect to *any injury* that takes place in this State," and that the words "any injury" necessarily encompass injuries by non-residents. While we concede that section 301(a) might have been more tightly drafted, we nevertheless reject the assertion that it is in irreconcilable conflict with section 110(c)(2).

Section 301(a) provides that "[t]ort liability is abolished" only "with respect to any injury that takes place in this State *in accordance with the provisions of this act.*" The phrase "in accordance with the provisions of this act" modifies the verb "is abolished," and by incorporating all the other provisions of the no–fault act, indicates the extent to which tort liability is abolished. As one of the "provisions of th[e] act," Section 110(c)(2) explicitly preserves the right of a non–resident to sue in tort in this Commonwealth, provided that his action is maintainable under the law of his domicile. Sections 301(a) and 110(c)(2) are therefore not in conflict, but are rather complementary provisions that function as a unit.

Moreover, even if we could find a conflict between sections 110(c)(2) and 301(a), section 110(c)(2) would nevertheless prevail under the principle that "[w]henever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be

construed, if possible, so that effect may be given to both." 1 Pa.C.S.A. § 1933 (1964–78 Supp.). To hold that all non–residents must meet the requirements of section 301(a) in order to sue in tort in Pennsylvania would be to nullify section 110(c)(2), for then there would be no situation in which section 110(c)(2) could operate. To apply section 110(c)(2) to non–residents and limit the effect of section 301(a) to residents, however, is to give meaning and effect to both provisions.

Finally, even were we to agree with the position taken by the lower court, that an irreconcilable conflict existed between sections 110(c)(2) and 301(a), still section 110(c)(2) would prevail under the principle that "[i]f the conflict between [ ] two provisions is irreconcilable, the special provisions *[sic]* shall prevail and shall be construed as an exception to the general provision." 1 Pa.C.S.A. § 1933 (1964–78 Supp.); *Appeal of Yerger*, 460 Pa. 537, 333 A.2d 902 (1975); *Paxon Maymar, Inc. v. Pa. Liquor Control Bd.*, 11 Pa. Cmwlth. 136, 312 A.2d 115 (1973). Section 301(a), abolishing tort liability with respect to any injury that occurs in the Commonwealth, is a general provision; section 110(c)(2), preserving the right to sue in tort for a limited class of persons (domiciliaries of other states) is a narrow, or special, provision, specifically addressed to the situation present in this case.[2]

We do not share the lower court's belief that the Legislature could not have reasonably granted non–residents the right to sue in tort in situations where residents were denied the right.

To understand the policies that might have prompted the Legislature to enact section 110(c)(2), the provision

2. The dissent, although believing that sections 110(c)(2) and 301(a) are reconcilable, states that if an irreconcilable conflict did exist, then section 301(a) would prevail under 1 Pa.C.S.A. § 1934 (1964–78 Supp.). That provision, however, states:

*Except as provided in section 1933 of this title (relating to particular controls general)*, whenever, in the same statute, several clauses are irreconcilable, the clause last in order of date or position shall prevail. [Emphasis added.]

should be read in conjunction with section 110(c)(1), 40 P.S. § 1009.110(c)(1) (1979–80 Supp.), which provides:

> The basic loss benefits available to any victim or to any survivor of a deceased victim shall be determined pursuant to the provisions of the state no–fault plan for motor vehicle insurance in effect in the state of domicile of the victim on the date when the motor vehicle accident resulting in injury occurred. If there is no such state no–fault plan in effect or if the victim is not domiciled in any state, then basic loss benefits available to any victim shall be determined pursuant to the provisions of the state no–fault plan for motor vehicle insurance, if any, in effect in the state in which the accident resulting in injury occurs.

Thus, section 110(c)(1) expresses two general rules governing the rights of a non–resident to recover basic loss benefits when the non–resident is injured in a motor vehicle accident in this state. If the non–resident is domiciled in a state that has in effect a state no–fault plan for motor vehicle insurance, the non–resident is denied the benefits available under Pennsylvania's No–Fault Act and is remitted to the benefits available under the plan of his home state. If the non–resident is domiciled in a state that does not have in effect a state no–fault plan, or if the non–resident is not domiciled in any state, then he is entitled to the basic loss benefits provided under Pennsylvania's No–Fault Act.[3] However, no

---

3. It may be noted that a similar statutory construction problem exists with regard to sections 110(c)(1) and 201(a), 40 P.S. § 1009.201(a) (1979–80 Supp.), of the act as exists between sections 110(c)(2) and 301(a). Section 201(a) provides:

> If the accident resulting in injury occurs in this Commonwealth, any victim or any survivor of a deceased victim is entitled to receive basic loss benefits in accordance with the provisions of this act.

The lower court evidently believed that appellant was entitled under this provision to the basic loss benefits under Pennsylvania's No–Fault Act. However, such a conclusion is by no means apparent, for the scope of section 201(a) is limited by section 110(c)(1) for the same reasons that the scope of section 301(a) is limited by section 110(c)(2).

We also note that at least one other court has misconstrued the effect of section 110(c)(1). In *Wierbinski v. State Farm Mutual Ins. Co.*, 477 F.Supp. 659 (W.D.Pa. 1979), a New York resident was

matter which of these rules pertains, under section 110(c)(2) the non–resident always retains the tort remedies that are available under the law of his home state.

The fairness of this statutory scheme has been defended on the following grounds:

First, it [the statutory scheme] is more consistent with contemporary treatment of conflict of laws problems by the Pennsylvania courts. If a Pennsylvania court has jurisdiction over a controversy, it will look first to Pennsylvania law, *including* its conflicts provisions. Pennsylvania generally accepts the Restatement Second view on conflicts of law, which looks to "significant contacts" of the parties involved in the controversy. In any case, a significant "contact" which the court will consider is the party's domicile. But, more importantly, in a no–fault

injured in Pennsylvania in an automobile accident. Since the parties had conceded that under the Pennsylvania No–Fault Act and the common law, Wierbinski's right to basic loss benefits was to be determined according to New York law, the court interpreted New York's No–Fault Act to determine the benefits that were due. As it so happened, New York's No–Fault Act afforded a resident who was injured in an out–of–state motor vehicle accident the maximum benefits that were available under the no–fault plan of the state in which the accident occurred. Thus, the court held that Wierbinski was entitled to the maximum benefits allowed under the Pennsylvania act. Later *in its opinion, however, the court implied that Wier-binski* was entitled to the basic loss benefits provided by the Pennsylvania No–Fault Act regardless of whether he was entitled to those benefits as a matter of New York law since our act provides "coverage for all persons involved in an accident in [Pennsylvania], and [ ] Pennsylvania has a 'legitimate and permanent interest' in providing coverage for injuries within its boundaries." 477 F.Supp. at 664. Still later in its opinion, the court ignored the choice–of–law provisions in the Pennsylvania No–Fault Act and held that under common law "it is the Pennsylvania No–Fault Act which most govern the award of attorney's fees and interest on overdue insurance proceeds." *Id.*

Finally, we note that several courts in other states have applied the provisions of their no–fault motor vehicle insurance acts in determining the rights on non-resident victims to basic loss benefits and to sue in tort. *See Hime v. State Farm Fire & Cas. Co.,* Minn., 284 N.W.2d 829 (1979); *Cyr v. Farias,* 367 Mass. 720, 327 N.E.2d 890 (1975); *Johnson v. Liberty Mutual Ins. Co.,* Fla.App., 297 So.2d 858 (1974). The acts of those states, however, did not contain provisions similar to section 110(c)(1), (2).

context it may be the critical contact. As earlier described in this text, the rules of priority establish the general rule that benefits are paid by tracking the *victim's* insurance coverage, not the motor vehicle policy. Although there may be commendable policy considerations in a view which pays benefits to *any* victim of a Pennsylvania accident, it is clear that principal interest is on the part of the victim's state. It is there that the victim could be relegated to "relief" or "welfare" rolls, or where he may be eligible for some state–mandated government program for treatment or rehabilitation. Additionally, motor vehicle insurance is traditionally the business of state–of–domicile regulation. After all, the potential accident victim anticipates in the first instance that he must comply with, and will receive benefits under *his* insurance policy.

Secondly, this interpretation is not inconsistent with the history of the Pennsylvania Act. As stated above, the pertinent provisions of the Pennsylvania No–Fault Act were taken virtually verbatim from the proposed national act, S–354. The national act was based upon the assumption that it or similar no–fault acts (i. e. complying with minimum federal standards) would be adopted by all of the states. Domiciliaries of each state would look to the first party benefits available under their own state's no–fault plan. Again, this would comport with the expectations of the parties who would receive certain benefits contracted for in exchange for premiums paid. Although the underlying assumption of uniformity broke down because of the failure of many states to enact no–fault plans, the Pennsylvania Act had already provided for such an eventuality in Section 110(c)(1). The general rule there stated is clear: "Basic loss benefits available to any victim . . . shall be determined pursuant to the provisions of the state no–fault plan . . . in effect in the state of domicile of the victim."

A third consideration concerns the policies underlying the No–Fault Act. Is the policy of the Act to provide for all persons injured in Pennsylvania, or to provide for all

Pennsylvanians injured in motor vehicle accidents? As already noted, the basic intent of the Act is to provide basic loss benefits to Pennsylvanians injured in motor vehicle accidents, and to any other persons injured in Pennsylvania who would not otherwise be provided for. The contrary interpretation (that, under Section 201, [of the Pennsylvania No–Fault Act] all persons injured in Pennsylvania are entitled to Pennsylvania no–fault benefits) could result in a boon for a person from a no–fault state who is injured in Pennsylvania, and a drain on the Pennsylvania insurance system in order to provide benefits to out–of–state residents who pay no insurance premiums in this jurisdiction.

Pennsylvania Trial Lawyers Assoc., The Pennsylvania No-Fault Motor Vehicle Insurance Act, § 1:16.3 at 131–32 (Shrager ed. 1979) (footnotes omitted).

*See also* American Bar Assoc., Automobile No–Fault Insurance: A Study by the Special Committee on Automobile Insurance Legislation 60–62 (February 1978); Kozyris, No–Fault Automobile Insurance and the Conflict of Laws—Cutting the Gordian Knot Home–Style, 1972 Duke L.J. 331, 389–403.

By adopting choice–of–law principles that direct a court to look to the law of the victim's domicile in determining the victim's right to basic loss benefits and his right to sue in tort, the Legislature has ensured that the reasonable expectations of every victim in an automobile accident in this Commonwealth will be fulfilled. If the victim is a non–resident who is domiciled in a state that has its own no–fault act, he is completely excluded from the benefits provided under Pennsylvania's No–Fault Act, but he keeps the right to recover the benefits that are due to him under the no–fault plan in effect in his home state, and also the right to maintain a tort action in accordance with the laws of that state. The non–resident thus gets no more and no less coverage for his losses than the coverage he would have received had the accident occurred in his home state, which is to say that the non–resident and the Pennsylvania resi-

dent are treated alike, both recovering according to the law of their respective domiciles.

Admittedly, the possibility exists that a non–resident who is domiciled in a state that has not passed a no–fault act may receive liberal treatment under section 110(c)(1), (2). Under section 110(c)(1), such a non–resident may participate in the benefits available under the Pennsylvania act regardless of his fault in causing the accident, while still retaining, under section 110(c)(2), his right to sue in tort under the laws of his home state. Nevertheless, the Legislature might have concluded that public policy requires that a non–resident injured in a motor vehicle accident in this state always be guaranteed basic loss benefits under a no–fault plan. It should also be remembered that the Legislature might have been persuaded that any generally–worded choice–of–law provision should be capable of ready application to a large number of cases, even if in a particular case some inequity might result. As one commentator has stated: "The purpose of no–fault laws is, to a large extent, the simplification of automobile accident administration. That simplification, for interstate cases governed and administered under state and not national laws, will be totally lost unless the statute is completely clear, in each forum state, as to just how the extrastate aspects of each case are to be handled." Leflar, Choice–of–Law Statutes, 44 Tenn.L.Rev. 951, 966–67 (1977) (footnote omitted). *See also* Kozyris, No–Fault Insurance and the Conflict of Laws—An Interim Update, 1973 Duke L.J. 1009.

The order of the lower court is reversed.[4]

CAVANAUGH, J., files a dissenting opinion.

CAVANAUGH, Judge, dissenting:

Appellant, Michael Toter, a resident of New Jersey, was involved in a motor vehicle accident in Bucks County, Pennsylvania, on September 9, 1976. Appellee, Sara E. Knight,

4. We note that another panel of this court has reached the same conclusion we reach here. *See DuBose v. McCoy,* 277 Pa.Super. 149, 419 A.2d 705 (1980).

was the operator of the other vehicle involved in the accident. As a result of the accident, appellant filed a complaint in trespass against appellee in Bucks County alleging personal injuries and that he incurred medical expenses "in excess of $200.00."[1] Appellee filed preliminary objections in the nature of a demurrer on the grounds that the appellant failed to meet the tort liability requirements set forth in the Pennsylvania No–Fault Motor Vehicle Insurance Act.[2] The court below sustained appellee's preliminary objections and appellant has filed an appeal to this Court. This Court has reversed the order of the court below and I dissent.[3]

On appeal, the sole question for our determination is whether the appellant's right to bring an action in trespass is controlled by the Pennsylvania No Fault Insurance Act which provides that medical expenses must exceed $750.00 exclusive of diagnostic x–rays costs and rehabilitation costs in order to sue in tort, or the New Jersey No Fault Insurance Act which has a lower threshold of $200.00, exclusive of hospital expenses, x–rays, and other diagnostic medical expenses.[4]

1.  Paragraph 9 of the amended complaint in trespass states:
    "9. As a result of this accident, plaintiff has been or will be obliged to receive and undergo medical attention and care and to expend various sums of money or incur various expenses for the injuries he has suffered, the cost or reasonable value of which is an amount which is in excess of $200.00 exclusive of hospital expenses, x–rays, and other diagnostic medical expenses and he may be obliged to continue to expend such sums or incur such expenditures for an indefinite time in the future."

2.  Act of July 19, 1974, P.L. 489, 40 P.S. § 1009.101, et seq.

3.  As pointed out in the majority opinion, another panel has reached the same conclusion as the majority that the right of the appellant to sue in tort is determined by the law of New Jersey, the appellant's domicile. *DuBose v. McCoy*, 277 Pa.Super. 149, 419 A.2d 705 (1980). It should be noted that the *DuBose* opinion did not consider § 301 of the Act which abolished tort liability in certain instances.

4.  The applicable part of the New Jersey Statute is as follows:
    Every owner, registrant, operator, or occupant of an automobile to which Section 4, personal injury protection coverage, regardless of fault, applies, and every person or organization legally responsible for his acts or omissions, is hereby exempted from tort liability for damages to any person who is required to maintain the coverage

In Pennsylvania, the No—Fault Insurance Statute provides in part:

Tort liability

(a) Partial abolition—Tort liability is abolished with respect to any injury that takes place in this State in accordance with the provisions of this act if such injury arises out of the maintenance or use of a motor vehicle except that:

(5) A person remains liable for damages for non—economic detriment if the accident results in:

(B) the reasonable value of reasonable and necessary medical and dental services, including prosthetic devices and necessary ambulance, hospital and professional nursing expenses incurred in the diagnosis, care and recovery of the victim, exclusive of diagnostic x—ray costs and rehabilitation costs in excess of one hundred dollars ($100.00) is in excess of seven hundred fifty dollars ($750.00)... Act of July 19, 1974, P.L. 489 § 301, 40 P.S. § 1009.301.

Reading the above provision alone, I would have no difficulty in deciding that medical services (exclusive of diagnostic x—ray costs and rehabilitation costs) must exceed the threshold amount of $750.00 before an action in tort could be commenced in Pennsylvania for injuries suffered in an accident which occurred in this State. However, the statute also provides in Section 110 as follows:

The right of a victim or of a survivor of a deceased victim to sue in tort shall be determined by the law of the state of domicile of such victim. 40 P.S. 1009.110(c)(2).

mandated by this act, or to any person who is required to maintain the coverage mandated by this act, or to any person who has a right to receive benefits under Section 4 of this act as a result of bodily injury, arising out of the ownership, operation, maintenance, or use of such automobile in this State, if the bodily injury, is confined solely to the soft tissue of the body and the medical expenses incurred or to be incurred by such injured person or the equivalent value thereof for the reasonable and necessary treatment of such bodily injury, is less than $200.00, exclusive of hospital expenses, x—rays and other diagnostic medical expenses ... (New Jersey Statutes Annotated, 39:6A–8).

Appellant contends that under this section of the Pennsylvania No–Fault Statute, we must look to the law of New Jersey to determine the applicable threshold amount to commence an action in tort.

This contention ignores the clear language of § 301 of the Pennsylvania No–Fault Act which abolishes tort liability "with respect to any injury that takes place in this State" unless medical expenses exceed $750.00 exclusive of diagnostic x–ray costs and rehabilitation costs.

The court below found an irreconcilable conflict between § 110 and § 301 of the Pennsylvania No–Fault Statute. I would not go this far. However, I believe that in order for a person domiciled outside of Pennsylvania to sue tort in Pennsylvania for injuries resulting from an accident which has occurred in Pennsylvania, the medical expenses must exceed $750.00 as provided for in § 301 of the Pennsylvania No–Fault Statute.

In construing a statute, every provision must be given effect. Statutory Construction Act, Act of November 25, 1970, P.L. 707, 1 Pa.C.S.A. § 1921, *City of Wilkes–Barre v. Ebert*, 22 Pa.Cmwlth. 356, 361, 349 A.2d 520, 522 (1975). We should not ignore the threshold of medical expenses in the Pennsylvania Statute merely because New Jersey has a lower threshold. If the legislature intended that the medical threshold was to be $750.00 only if the accident victim was domiciled in Pennsylvania, it could have so stated. On the contrary, it used unambiguous language to abolish tort liability with respect to any accident occurring in Pennsylvania where medical expenses do not exceed $750.00, exclusive of diagnostic x–ray costs and rehabilitation costs in excess of one hundred dollars.

I have considered the findings of the legislature which found that an insurance law which "eliminates the need to determine fault *except when a victim is very seriously injured*" is a comprehensive and fair system of insurance. Act of July 19, 1974, P.L. 489, 40 P.S. § 1009.102 (emphasis added). New Jersey apparently does not require injuries to be as serious as does Pennsylvania in order to bring an

action in tort to recover for injuries. I do not intend to equate the seriousness of an injury with medical expenses resulting from the injury, but our legislature has determined that if medical expenses do not exceed $750.00 (exclusive of certain costs) the injury is not serious enough to result in a trespass action based on tort.

The Pennsylvania Code, in its discussion of § 110 of the No–Fault Act states: "If a nonresident is involved in an accident in the Commonwealth, he will receive benefits as provided under his state of domicile no–fault plan. If his state of domicile has no such plan, or if the nonresident has no state of domicile, then he will receive benefits as provided under the Commonwealth no–fault plan." Title 31 Pa. Code § 66.1–110(c)(1)(b). The Pennsylvania Code is silent with respect to the situation where the nonresident's state of domicile has a lower threshold of medical expenses than does the State of Pennsylvania.

I do not believe that § 110 and § 301 of the No–Fault Statute are irreconcilable. However, if they are irreconcilable, then under the Statutory Construction Act, § 301 would prevail over § 110. The Statutory Construction Act of November 25, 1970, P.L. 707, 1 Pa.C.S.A. § 1934 provides that when clauses of the same statute are irreconcilable, the last clause in order of position shall prevail. I am convinced that the legislature having unequivocally abolished tort liability in cases where an accident occurs in Pennsylvania and medical expenses do not exceed $750.00 did not intend to reinstate such liability where the victim happens to be domiciled outside of the Commonwealth and the state of the victim's domicile permits an action in tort even though medical expenses are less than $750.00. Such a conclusion would not only be contrary to the unambiguous language of § 301 of the statute, but also contrary to the express intent of the legislature as set fourth in the no–fault statute to allow actions in tort only where the victim is very seriously injured.

I would affirm the order of the court below.