Elizabeth SWEZEY and Robert J.
Swezey, Guardians of Daniel
Swezey, Plaintiffs,

v.

The HOME INDEMNITY COMPANY,
Defendant.

Civ. A. No. 81–200.

United States District Court,
D. Delaware.

Jan. 14, 1982.

Richard I. G. Jones, Carl Schnee, Susan C. Del Pesco and Vernon R. Proctor of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., for plaintiffs.

F. Alton Tybout of Tybout, Redfearn, Casarino & Pell, Wilmington, Del., for defendant.

## MEMORANDUM OPINION

LATCHUM, Chief Judge.

Plaintiffs, Elizabeth and Robert J. Swezey, guardians of Daniel Swezey, have brought this action against the Home Indemnity Company ("Home"), pursuant to 28 U.S.C. § 2201, seeking a judgment declaring that their son Daniel Swezey is entitled to recover "basic loss benefits" covering his sizable and continuing expenses for medical care and rehabilitation under the Pennsylvania No-Fault Motor Vehicle Insurance Act, 40 *Pa.Stat.Ann.* § 1009.101 *et seq.* (the "Pennsylvania Act").[1] Both parties have filed motions for summary judgment pursuant to Rule 56, F.R.Civ.P. The question for decision is whether no-fault benefits granted by the Pennsylvania Act are available to a passenger in a Pennsylvania-licensed vehicle, when that passenger was domiciled in Delaware and the accident occurred in Delaware. The Court concludes for the rea-

---

1. Docket Item ("D.I.") 1; Plaintiff Elizabeth Swezey is a citizen of Delaware, plaintiff Robert Swezey is a citizen of Pennsylvania and Home is a citizen of New Hampshire and New York (D.I. 1) and therefore jurisdiction exists by virtue of 28 U.S.C. § 1332(a)(1). *See also Fallat v. Gouran,* 220 F.2d 325, 326 (C.A.3, 1955) (in determining diversity jurisdiction it is the citizenship of the guardian and not the citizenship of the ward which controls).

sons hereinafter discussed that the passenger-plaintiff is not entitled to recover the basic loss benefits available pursuant to the Pennsylvania Act. The Court thereby will grant defendant's motion for summary judgment and deny plaintiffs' motion.

## I. FACTS

Russell A. Kurtz and Isabelle C. Kurtz, both Pennsylvania residents, purchased an automobile insurance policy from Home which provided no-fault coverage on June 10, 1979 for a Ford Pinto titled in the name of Russell Kurtz.[2] The policy was issued in Pennsylvania and provided coverage pursuant to the provisions of the Pennsylvania Act.[3] Jeffrey Kurtz, the son of Russell and Isabelle Kurtz, was a "covered person" under the policy.[4] On June 9, 1979, Jeffrey Kurtz drove the Pinto into Delaware to attend a social function in that state. Daniel Swezey, a domiciliary of Delaware, was a passenger of that car.[5] At approximately 1:30 A.M. on June 10, 1979, the Pinto collided with another automobile in Delaware with the result that Daniel Swezey was seriously injured.[6]

The plaintiffs previously filed a suit in the Superior Court in and for New Castle County, Delaware, against Jeffrey Kurtz. In that suit, the plaintiff asserted claims for his loss of income, medical expenses and non-economic benefits.[7] That suit was settled for the total liability coverage under Kurtz' liability insurance policy and the plaintiffs gave a release to Jeffrey Kurtz for damages for which Kurtz might have been liable under Delaware tort law.[8] Nevertheless, Swezey specifically reserved in the release the right to claim benefits pursuant to the contract of insurance controlled by the Pennsylvania Act.[9] As noted earlier, the plaintiffs are now seeking a judgment declaring that Daniel Swezey is entitled to recover the "basic loss benefits" pursuant to the insurance contract and the Pennsylvania Act. Thus, the Court must determine whether a passenger of a Pennsylvania secured vehicle who was domiciled in Delaware may recover benefits provided under the Pennsylvania Act for the accident which occurred in Delaware.

## II. THE PENNSYLVANIA ACT

Plaintiffs contend that they are entitled to recover basic loss benefits pursuant to Section 201(b) of the Pennsylvania Act.[10] That section provides:

*Accident outside this State.* —If the accident resulting in injury occurs outside of this Commonwealth, a victim or a survivor of a deceased victim is entitled to receive basic loss benefits if such victim was or is:

(1) an insured; or

(2) the driver or other occupant of a secured vehicle.

Plaintiffs assert that Section 201(b)(2) entitles Daniel Swezey to recover basic loss benefits under the Pennsylvania Act because Daniel Swezey was an occupant of a secured vehicle when the accident occurred in Delaware.[11] Defendants, however, contend that Section 110(c)(1)[12] limits the scope of Section 201(b)(2).[13] Section 110(c)(1) provides:

The basic loss benefits available to any victim or to any survivor of a deceased victim shall be determined pursuant to the provisions of the state no-fault plan for motor vehicle insurance in effect in the state of domicile of the victim on the date when the motor vehicle accident resulting in injury occurs. If there is no such state no-fault plan in effect or if the

2. D.I. 1, ¶ 7.

3. *Id.*

4. D.I. 8 at 8.

5. D.I. 12 at 3.

6. D.I. 1, ¶ 8.

7. D.I. 12 at 4.

8. *Id.*

9. *See* D.I. 15 at 14.

10. 40 P.S. § 1009.201(b).

11. D.I. 8 at 7.

12. 40 P.S. § 1009.110(c)(1).

13. D.I. 12 at 9–11.

victim is not domiciled in any state, then basic loss benefits available to any victim shall be determined pursuant to the provisions of the state no-fault plan for motor vehicle insurance, if any, in effect in the state in which the accident resulting in injury occurs.

Defendant argues that because Swezey was a domiciliary of Delaware at the time of accident, he is entitled to recover only the benefits provided by the Delaware No-Fault Act ("Delaware Act").[14]

The Court must decide two questions. The first question is whether an irreconcilable conflict exists between Sections 110(c)(1) and 201(b) of the Pennsylvania Act. The second question is whether Delaware has a "no-fault plan" as defined by the Pennsylvania Insurance Commissioner.

### A. Interplay between Sections 110(c)(1) and 201(b)

 No Court has discussed the relationship between Sections 110(c)(1) and 201(b). *Toter v. Knight*,[15] however, addressed the interplay between Sections 110(c)(2)[16] and 301(a).[17] Section 110(c)(2) provides that the victim's right to sue in tort is determined by the law of his domicile; while Section 301(a) generally abolishes tort liability for accidents occurring in Pennsylvania. In *Toter*, the plaintiff contended that an irreconcilable conflict between these two sections exists whenever a non-Pennsylvania domiciliary is a victim of a motor vehicle accident involving a Pennsylvania domiciliary, and the victim's state has retained traditional tort liability. In such a situation, Section 110(c)(2) would mandate the application of tort liability; while Section 301(a) would prohibit it.

*Toter* rejected the plaintiff's contention, finding that Section 110(c)(1) and 301(a) did not conflict, but rather were complimentary.[18] It held that Section 301(a) is subject to the provisions of Section 110(c)(2) which embodies two choice of law principles: "1) The right of the victim of a motor vehicle accident to sue in tort shall be determined by the law of his domicile; and 2) if the victim is not domiciled in a state, the victim's right to sue shall be determined by the law of the state in which the accident occurred."[19] Section 110(c)(2) thus dictates who is eligible to receive the benefits provided by the Pennsylvania Act. If Section 110(c)(2) directs the victim to recover pursuant to the Pennsylvania Act, then Section 301(a) will apply. But if Section 110(c)(2) mandates the application of another state's law, then Section 301(a) simply will not apply. Therefore, no irreconcilable conflict could exist.[20]

The plaintiffs argue that *Toter* is not dispositive because Section 201(b) is distinguishable from Sections 301(a) and 201(a). They note that Sections 301(a) and 201(a) expressly provide that basic loss benefits must be paid in accordance with the provisions of the Act; while Section 201(b) does not provide for such a conditional grant.[21] Thus, the plaintiff asserts that there is an irreconcilable conflict between Sections 110(c)(1) and 201(b) because Section 201(b), unlike 201(a), is intended to be independent of Section 110(c)(1).[22] This Court is unpersuaded by this argument and holds that Section 201(b) is applicable only when Section 110(c)(1) directs the victim to recover

---

**14.** 21 *Del.C.* § 2118.

**15.** 278 Pa.Super. 547, 420 A.2d 676 (1980).

**16.** 40 P.S. § 1009.110(c)(2).

**17.** 40 P.S. § 1009.301(a).

**18.** 420 A.2d at 678–79.

**19.** *Id.* at 678.

**20.** *Toter, in dicta*, also indicated that Sections 110(c)(1) and 201(a) would be resolved in the

same manner. Section 110(c)(1) directs the victim either to Section 201(a) or to another state's no-fault law. *Id.* at 680 n.3. *See also Knappenberger v. Bittner*, 524 F.Supp. 777 (W.D.Pa., 1981) (applying *Toter* in a Section 301(a) situation).

**21.** D.I. 22 at 5–6.

**22.** D.I. 15 at 4–5.

pursuant to the Pennsylvania Act. Any other reading would either nullify a subsection of the statute or lead to absurd results.[23]

### B. *The Delaware Act*

■ The Court must now interpret Section 110(c)(1) to determine which state law applies to the facts of this case.

Because Delaware is the state of the victim's domicile and where the accident occurred, the Delaware No-Fault Act (Delaware Act) will apply if it qualifies as a no-fault plan under the Pennsylvania Act.

To determine whether the Delaware Act is a no-fault plan, the Court will look to the regulations promulgated pursuant to the Pennsylvania Act by the Pennsylvania Insurance Commissioner. 31 *Pa.Code* § 66.-41(b)(2) defines a no-fault plan:[24]

A "state no-fault plan" is defined to be a plan which contains the following elements:

(i) compulsory or mandatory automobile insurance,

(ii) first party benefits, and

(iii) a restriction on the right to bring action for noneconomic detriment, or a

relevant change in the evidentiary rules of practice and proof with respect to these actions.

The parties do not dispute that the Delaware Act satisfies the first two prongs of the regulations. Nor do they dispute that the Delaware law fails to restrict the right to sue for non-economic detriment. They do dispute, however, the second alternative of the third prong—whether Delaware law made a relevant change in the evidentiary rules of practice and proof with respect to actions for non-economic detriment. To make this determination, this Court must look to the Delaware Act.

One of the primary objectives of the Delaware Act is to insure prompt payment of an injured party's medical expenses, lost earnings and property damage.[25] This is accomplished by granting the injured party the right to receive immediate payment for damages caused from a motor vehicle accident without awaiting protracted litigation.[26] If the insured decides to institute an action for damages against the tortfeasor, the Delaware Act precludes him from pleading or introducing into evidence those benefits which were compensable by his no-fault insurer.[27] The insured party, nevertheless, may plead, introduce into evi-

---

**23.** For example, if an accident occurred in New Jersey, where a New Jersey domiciliary was a passenger of a Pennsylvania-secured vehicle and if Section 201(b) is independent of Section 110(c)(1), then the New Jersey domiciliary could recover benefits pursuant to the Pennsylvania Act. However, if the same passenger, in the same secured vehicle was in an accident in Pennsylvania, then the New Jersey domiciliary could not recover the basic loss benefits provided by the Pennsylvania Act, but would be limited to those benefits provided by the New Jersey Reparation Act N.J.S.A. 6A–8. *See Toter,* 420 A.2d 680 n.3.

Pennsylvania generally accepts the Restatement Second view on conflicts of law, which looks to the "significant contacts of the parties involved in the controversy." *Id.* at 680 *quoting* Pennsylvania Trial Lawyers Assoc., The Pennsylvania No-Fault Motor Vehicle Insurance Act, § 1:16.3 at 131–32 (Shrager ed. 1979). To allow the non-domiciliary who was involved in an accident outside the Commonwealth of Pennsylvania to recover benefits provided by the Pennsylvania Act while prohibit-

ing that same nonresident from recovering under the Act when the accident occurs in Pennsylvania runs contrary to the Pennsylvania conflicts principles. The plaintiff, in this case, has failed to offer any rationale to justify its interpretation of Section 110(c)(1) and 201(b).

**24.** 31 *Pa.Code* § 66.41(b)(2) expressly defines a "state no-fault plan" as that term is used in 31 *Pa.Code* § 66.41(b). Section 66.41(b) is similar to Section 110(c)(1) of the Pennsylvania Act and defines which nonresident is eligible for benefits provided by the Pennsylvania Act when that nonresident is in an accident in the Commonwealth of Pennsylvania. This Court adopts the definition of "no fault plan" for the facts of this case. Nevertheless, it does not decide whether this is the exclusive definition of "state no-fault plan." *See e.g.* 40 P.S. § 1009.103 (definition of no-fault benefits and no-fault insurance).

**25.** *DeVincentis v. Maryland Casualty Co.,* 325 A.2d 610 (Del.Super.1974).

**26.** 21 *Del.C.* § 2118(a).

**27.** *Id.* § 2118(g).

dence, and recover for general damages, including those for pain and suffering. The no-fault insurer who compensates the insured is subrogated to the rights of the insured and may recover from the tortfeasor for those benefits it has paid to the insured party.[28] Although the insured and the no-fault insurer have the right to recover from the tortfeasor, they must do so in separate actions because Delaware prohibits these parties from consolidating their claims against the tortfeasor.[29]

Defendant contends that because the common law action against the tortfeasor has been separated and that the insured may not introduce into evidence, against the tortfeasor, those special damages compensable by the no-fault insurer, Delaware has instituted significant relevant changes in the evidentiary rules.[30] Thus, it asserts that the Delaware Act is a no-fault plan as defined by the Pennsylvania regulation. The United States District Court for the Middle District of Pennsylvania in *Yoder v. Dressler*[31] is the only court that has addressed the question whether the Delaware Act is a no-fault plan. In *Yoder*, the court held that the Delaware no-fault motor vehicle statute in effect on April of 1977 did not make a relevant change in the evidentiary rules of practice and proof with respect to actions for non-economic detriment:

> The evidentiary change in the Delaware statute effective in April of 1977 did not alter the ultimate tort liability for a motor vehicle accident. It merely split the existing cause of action, permitting the insurance carrier to sue for the special damages it had paid the victim and forbidding the victim to recover them. However, the suit of the victim and insurer could be combined for trial. Thus, the

liability of the tortfeasor and the evidence considered by the jury remained the same as under pre-no-fault law. *DeVincentis v. Maryland Casualty Co.*, Del. Super., 325 A.2d 610 (1974).[32]

Despite its holding, the court expressly noted that its holding "will not necessarily apply to similar factual situations arising after June of 1977," the date Delaware amended the Act.[33] Thus, this Court must examine the pre-1977 law and the amended law to determine whether there has been a relevant change in the evidentiary rules of practice and proof with respect to Delaware actions for non-economic detriment.

Prior to the amendments of 1977, Delaware law permitted the insured, who was claiming general and certain special damages, and the no-fault insurer who was claiming special damages as a subrogee of the insured, to institute separate actions against the tortfeasor. The insured, however, was entitled to recover only those damages that were not compensable by the no-fault insurer; while the no-fault insurer was entitled to recover only those special damages it had paid to the insured.[34] When the insured maintained a separate cause of action against the tortfeasor, the Delaware Act changed the common law evidentiary rules of practice and procedure. The insured was barred from pleading or introducing into evidence damages that were compensable by the no-fault insurer. Although the Delaware Act permitted the insured and the no-fault insurer to maintain their actions separately, the court in its discretion could have consolidated the actions for trial.[35] If consolidated, the no-fault insurer could have plead and introduced into evidence those special damages it had paid to the insured. Thus, even

---

**28.** *Id.* § 2118(f). The no-fault insurer's subrogated rights are limited to the maximum amounts of the tortfeasor's liability coverage.

**29.** *Id.* § 2118(f)(4).

**30.** D.I. 12 at 40.

**31.** 505 F.Supp. 111 (M.D.Pa.1981).

**32.** *Id.* at 113.

**33.** *Id.* at 113 n.2.

**34.** *DeVincentis v. Maryland Casualty Co.*, 325 A.2d 610 (Del.Super.1974).

**35.** *Id.*

though this evidence was not admissible for the insured's cause, it nevertheless would have been heard by the jury. The *Yoder* court believed that because the jury could have heard evidence of all of the damages suffered by the insured, the bar against the insured's ability to plead and introduce into evidence certain damages was merely a nominal change in the common law.[36]

In 1977, the Delaware Legislature amended the no-fault act to prohibit the joinder of the insured and the no-fault insurer in an action against the tortfeasor.[37] Thus, consolidation is no longer possible and the factfinder will not be entitled to hear evidence of damages that are compensable by the no-fault insurer when the insured institutes action against the tortfeasor. This Court must now determine whether this change in the evidentiary rules is a relevant one in those actions against the tortfeasor for non-economic detriment.

It is common knowledge that attorneys involved in personal injury litigation generally believe that there is a relationship between special and general damages. Some believe that for every dollar recoverable as special damages, two dollars will be recovered as general damages. Often this factor is used to assess the "value of the case." The reliance by the bar upon this relationship during the pre-trial period, however, does not mean that special damages are a legally relevant indicator of the monetary worth of claims for pain and suffering.

There is a difference of opinion as to the legal significance of such evidence. In *Zagari v. Gralka*,[38] the plaintiffs brought action pursuant to Section 301(a)(5) of the Pennsylvania Act, seeking to recover non-economic damages. The Court rejected the plaintiffs' contention that they were entitled to introduce into evidence the medical expenses and work loss caused by the automobile accident:

> Appellants contend that the best indicators of the monetary worth of claims for pain and suffering are medical expenses and work loss, and that without this data "a Plaintiff's pleading and presentation of damages at trial will be empty shells lacking crucial information." ... We find this contention to be absurd. One cannot discern how much pain and suffering was endured by considering how much money changed hands between the injured party and those who treated him. It is the nature and extent of the treatment required which is more truly an indication of pain and suffering, and evidence of treatment may be introduced in a tort action for pain and suffering.[39]

The court also noted that to allow economic losses to be plead and proved would, "at the very least be a source of confusion for the fact finder."[40] The *Zagari* dissent, however, believed that proof of economic losses were relevant to the proof of non-economic losses and should be admitted.[41]

In *DeVincentis v. Maryland Casualty Co.*,[42] the court was interpreting the pre-1977 Delaware no-fault law. The *DeVincentis* defendant argued that the insured's and no-fault insurer's separate actions, could not be consolidated because "one of the purposes of the severance is to avoid having the jury award general damages upon a factor relationship to the special damages."[43] The court conceded that perhaps the "legislative objective was to assure

---

**36.** 505 F.Supp. at 113.

**37.** 21 *Del.C.* § 2118(f)(4).

**38.** 264 Pa.Super. 239, 399 A.2d 755 (1979).

**39.** 399 A.2d at 758.

**40.** *Id.*

**41.** *Id.* at 762.

**42.** 325 A.2d 610 (Del.Super.1974).

**43.** *Id.* at 612.

that the injured party could not recover greater general damages from possible confusion of the jury by presenting figures showing special damages for which he was not entitled to recover under the statute," but believed that the court could, with proper instruction, avoid the confusion.[44] The Delaware Legislature in 1977, however, effectively overturned *DeVincentis.* It enacted Section 2118(f)(4) which prohibits the joinder of the insured and the no-fault insurer in an action against the tortfeasor.[45] Apparently the legislature believed that the consolidation of the insured's and the no-fault insurer's action against the tortfeasor would reduce the effectiveness of the Act.

The majority and dissenting opinion in *Zagari,* the opinion in *DeVincentis,* and the amendment of Section 2118(f) by the Delaware Legislature illustrates that there is a difference of opinion as to the legal effect of introducing special damages in an action for non-economic detriment. Some believe that evidence of economic losses is highly relevant to the proof of non-economic losses, while others believe that it is irrelevant and serves only to confuse the jury. The legal effect need not be decided here. What is important is that most people believe that the evidence affects the jury. To change the law from allowing evidence of certain special damages to excluding them is a relevant change in the rules of evidence. Therefore, when the Delaware Legislature amended the Delaware Act in 1977, to assure that a factfinder would not hear evidence of special damages that are compensable by the no-fault insurer under the Delaware Act, it made a deliberative and relevant change in the evidentiary rules of practice and proof with respect to non-economic actions. Thus, the Delaware Act is a no-fault plan as defined under the Pennsylvania Act. Section 110(c)(1) directs the plaintiff to recover pursuant to the Delaware Act. He is not entitled to recover basic loss benefits provided by the Pennsylvania Act.

An order will be entered in accordance with this Memorandum Opinion.