## Muller v. State Farm Mutual Insurance Co.

*Timothy A. Shollenberger,* for plaintiff.

*George F. Douglas, Jr.* for defendant State Farm Mutual.

*James D. Flower, Jr.,* for defendant Insurance Company of North America.

HOFFER, *J.,* April 9, 1984—Plaintiff, Franciscus Muller, a Maryland resident, was involved in an automobile accident in Harrisburg, Dauphin County, Pa. He subsequently applied for benefits due under his policy with defendant, State Farm Mutual Insurance Company. Although various sums were paid, plaintiff claims entitlement to additional amounts provided under the Pennsylvania No-fault Motor Vehicle Insurance Act. Plaintiff also applied

for basic loss benefits under the Assigned Claims Plan of the Act. This application then was sent to defendant Insurance Company of North America, which has failed to make payment of any benefit. Both defendants have moved for summary judgment contending that plaintiff is entitled only to those benefits provided by Maryland statute.

These motions present two issues for our resolution: (1) whether the Insurance Commissioner's regulation defining "state no-fault plan" is valid and, if so, (2) whether Maryland's act fits within the definition, thus requiring plaintiff to recover under Maryland Law.

Pennsylvania's No-fault Act includes a provision that was intended to settle any conflicts of law problems involving automobile accidents. That provision states:

(c) Applicable Law. —

(1) The basic loss benefits available to any victim . . . shall be determined pursuant to the provisions of the state no-fault plan for motor vehicle insurance in effect in the state of domicile of the victim on the date when the motor vehicle accident resulting in injury occurs. If there is no such state no-fault plan in effect . . . then basic loss benefits available to any victim shall be determined pursuant to the provisions of the state no-fault plan for motor vehicle insurance, if any, in effect in the state in which the accident resulting in injury occurs.

Pennsylvania No-fault Motor Vehicle Insurance Act of July 19, 1974, P.L. 489, No. 176, 40 Pa. C.S. §1009.110(c)(1) (pkt. part 1983-84) (hereinafter No-fault Act).

The Insurance Commissioner subsequently adopted a regulation interpreting this provision and set forth in 31 Pa. Code §66.41 (Shepards 1980). That regulation, now in issue, provides:

(b)(2) A 'state no-fault plan' is defined to be a plan which contains the following elements:

(i) compulsory or mandatory automobile insurance,

(ii) first party benefits, and

(iii) a restriction on the right to bring action for noneconomic detriment, or a relevant change in the evidentiary rules of practice and proof with respect to these actions.

Because Maryland's act[*] does not restrict the right to sue in tort for noneconomic detriment, plaintiff contends that Maryland is without a no-fault plan and that Pennsylvania's law applies. Defendants contend that the regulation is unauthorized, in contradiction to the purpose of the act and, therefore, void. We cannot agree with defendants' position.

While the principle is well-established that a legislature cannot delegate its power to legislate, that body may confer authority in an agency in connection with the execution of a law. Commonwealth v. Cherney, 454 Pa. 285, 312 A.2d 38 (1973). Defendants do not dispute this principle but point to seven portions of the act which specifically authorize action by the commissioner. They would have us hold that the commissioner can adopt regulations for no sections other than those specifically designated. The nondelegation principle, however, does not require a statute to separately or precisely enumerate all details of administration. Rather, the legislature can delegate power by establishing general standards according to which that power must be exercised. Dussia v. Barger, 466 Pa. 152, 351 A.2d 667 (1975). Such authority is found in the Pennsylvania Administrative Code, which establishes an Insur-

---

[*] 5A Annotated Code of Maryland, Art. 48A, §542.

ance Department charged with the execution of state insurance laws and headed by an Insurance Commissioner authorized to exercise the powers and to perform the duties vested in and imposed upon the department. The Administrative Code of April 9, 1929, P.L. 177, as amended, 71 P.S. §§66, 412 (Adm. Code §§206, 1502). That each provision of the No-fault Act does not state explicitly the Commissioner's duty thus is irrelevant; the Commissioner has power to do that which is necessary to execute the insurance laws.

Pursuant to this power, the commissioner has authority to adopt regulations that carry into effect the legislative intent and public policy behind the enactment of Pennsylvania's No-fault Act. Contrary to defendants' position, we do not believe that the commissioner has exceeded this authority. Defendants essentially state three points in support of their position. First, they argue that, although the statute does not define no-fault plan, the statute's definition of no-fault insurance acts as a limitation on any requirements in the plan. While we agree that a no-fault plan clearly would provide no-fault insurance, the terms are not synonymous. As an indication of this distinction, we note that our own no-fault statute contains a limitation on the right to bring an action in tort. Clearly, the legislature did not intend to limit our no-fault plan merely to the provision of no-fault insurance. Moreover, because insurance is "a specialized area in which the commissioner has expert knowledge, we are bound to defer to his definition" as set forth in the adopted regulation. White v. Concord Mutual Insurance Co., 296 Pa. Super. 171, 182, 442 A.2d 713, 719 (1982).

Defendants next argue that the regulation exceeds the statute's purpose as set forth in §1009.102(b). This subsection states that the Act's

regulation does not contravene the legislative intent or public policy behind the No-fault Act and was adopted pursuant to the commissioner's valid exercise of delegated power.

Having determined that the regulation in question is valid, the remaining issue — whether Maryland has a no-fault plan — is a simple one to resolve. Application of the regulation's clear definition of no-fault plan to Maryland's statute demonstrates that one of the three elements of a no-fault is absent from Maryland's scheme. That omission, of course, is the requirement that a no-fault plan contain a restriction on the right to sue in tort. Interpreting this same regulation as applied to Maryland's statute under a similar factual situation, one court has stated:

It is obvious, therefore, that the Maryland no-fault act has no restriction on the right to bring an action for noneconomic detriment. This being so, the Maryland act does not qualify as a 'state no-fault plan' under the Insurance Commissioner's regulations, the effect is the same as though there was no state no-fault plan in Maryland and under the regulations, [plaintiff] will receive benefits as provided under Pennsylvania's no-fault plan. Sefret v. Tarter, 9 D.&C.3d 767, 771-72 (1979). We follow this reasoning and similarly hold that Pennsylvania's law must govern this case.

We make final note of defendant's contention that irrespective of the regulation's applicability, we nevertheless should consider Maryland a no-fault state. We have been unable to determine from defendant's briefs why we should disregard the clear meaning of this regulation and we refuse to so rule. Nevertheless, we would also point to a distinction between Maryland's statute and that of other so-called true no-fault states. As evidenced by the purpose and policy of Pennsylvania's Act, true no-fault

purpose is "to establish at reasonable cost to the purchaser of insurance, a Statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims. . . ." This legislative intent to protect individuals injured through the negligent use of our highways by others thus requires a liberal construction of the no-fault act and a pronounced propensity to find coverage unless equally strong and contrary legal or equitable considerations are present. Brader v. Nationwide Mutual Insurance Co., 28 Cumberland L.J. 316, 319 (1978).

Additionally, the statute itself is an expression of legislative intent and, as above noted, the act restricts the right to sue in tort. The basis for this restriction can be found in the legislative history behind enactment of the statute. The policy decisions made essentially envisioned some impediment or threshold to tort actions for less seriously injured victims, to eliminate the bulk of tort claims for personal injury arising from the maintenance or use of motor vehicles. With these underlying purposes in mind, we cannot find that the commissioner's regulation is against the purpose or public policy of the statute.

Finally, defendants argue that the regulation essentially requires each state to have a no-fault law identical to Pennsylvania's while our state statute contemplates differences in the various state tort laws. We disagree. The regulation establishes minimum standards that must be met for a statute to qualify as a no-fault plan. Within these limitations, states are free to adopt whatever criteria they deem proper. Thus, while the regulation requires some type of restriction on the right to bring an action in tort, the states are free to select the type or amount of restriction they desire, whether identical to Pennsylvania's or not. Clearly, then, the commissioner's

systems are characterized by the substitution of a comprehensive system of automobile insurance compensation for the tort liability system. States such as Maryland, which meet two of three no-fault requirements and may be termed modified no-fault states, are in actuality providing a mere extension of medical or disability benefits without altering the basic tort system. Defendant's suggestion that we consider Maryland a no-fault state thus seems to suggest that we read into the regulation an "or" rather than the "and" used to connect the definitional elements. Based upon the foregoing analysis, we refuse to accept such a construction of the statute. See M. G. Woodroof, J. R.Fonseca and A. M. Squillante, Automobile Insurance and No-fault Law §§16.11-16.13 (1974).

Although we hold that plaintiff is entitled to recover under Pennsylvania law, we also realize that in factual circumstances such as those presented here, certain inequities in the no-fault scheme arise. This situation was best expressed in Toter v. Knight, 278 Pa. Super. 547, 420 A.2d 676 (1980), as follows:

Admittedly, the possibility exists that a non-resident who is domiciled in a state that has not passed a no-fault act may receive liberal treatment under section 110(c)(1), (2). Under section 110(c)(1), such a non-resident may participate in the benefits available under the Pennsylvania Act regardless of his fault in causing the accident, while still retaining, under section 110(c)(2), his right to sue in tort under the laws of his home state. Id. at 557, 420 A.2d at 681. Any solution to this inequitable result must, of course, remain with the legislature. While we thus feel obligated to point out this problem, our decision on the merits of this case does not change.

## ORDER OF COURT

And now, April 9, 1984, for the reasons appearing in the opinion filed this date, defendant State Farm Mutual Insurance Company's motion for summary judgment is hereby denied.

It is further ordered that defendant Insurance Company of North America's motion for summary judgment is hereby denied.